BEASLEY v. NEWELL.

1. SURETY—ACTION ON INDEMNITY.—A surety who holds a mortgage or other collateral security given him to indemnify him against loss by reason of his suretyship, may proceed to enforce such security so soon as he becomes endangered and before actual payment by him.

2. MORTGAGE—CONSTRUCTION—GENERAL INTENT.—A mortgage deed recited that the mortgagees were sureties for the mortgagor, and for the purpose of securing the mortgagees harmless, the mortgagor conveyed to the mortgagees a tract of land by a mortgage in the usual form, but concluded with a power of sale, which, literally construed, was to be exercised only in the event that the premises could be sold for more than the amount

which the mortgagees "have paid," returning the overplus to the mortgagor. *Held*, that the concluding clause did not destroy the general intention of the mortgage, but was meant to provide only for the contingency of a surplus.

3. MORTGAGE TO SURETIES—RIGHTS OF CREDITOR.—A creditor being entitled to avail himself of the securities held by the sureties of his debtor, a mortgage such as this may be enforced by the creditor, even though the sureties, by reason of insolvency and non-residence, could never be required to pay the debt.

4. PROBATE COURT—JURISDICTION—ESTOPPEL.—A trustee and a purchaser under him cannot question the jurisdiction of the Court of Probate to render a judgment against the trustee, where he raised no such question in that court, and did not appeal from its decree.

5. APPEAL.—A question decided on Circuit, and no exception taken thereto, cannot be considered by this court.

6. PARTIES—AMENDMENT—TRUST FUNDS.—One of the sureties being dead and his estate insolvent, and the other beyond seas, the beneficiaries of the trust fund should be made parties to the cause; and, also, the trustee, if it is intended to surcharge or falsify the account taken in the Court of Probate.

Before NORTON, J., Darlington, April, 1892.

All the issues of law and fact in this case were referred to T. H. Spain, Esq., who made his report, wherein, after finding the facts as stated in the opinion of this court, he found as follows:

Can the sureties on a trust bond foreclose a mortgage (like the one in question), given to secure them free and harmless on account of their being my security on said bond against a purchaser with notice, when the sureties have not paid anything by reason of the default of the trustee? A surety is not liable to suit on a trust bond until it has been judicially ascertained that the trustee has defaulted. *Crane, Boylston & Co.* v. *Moses*, 13 S. C., 561. It has been judicially determined by the judgment of the Probate Court that the trustee, Isaac J. Newberry, is in default; therefore, the sureties are liable to suit, and have become endangered thereby, and can foreclose a mortgage against the principal given to indemnify them against loss. *Tenkersley* v. *Anderson*, 4 DeSaus., 44; *Hellams* v. *Abercrombie*, 15 S. C., 110.

2—40

Can the sureties foreclose against Newell, a purchaser with notice? I hold that they can. Granting that the judgment does not bind Newell as to amount, and that he had a right to surcharge and falsify the same, on which points no evidence was introduced, it is evidence of the default of the trustee. The defendant claimed that the order of the Probate Court, passed on the 7th of September, 1872, changed the contract of suretyship, and thereby discharging the sureties. It is a principle of law, that when the creditor and principal change the terms of the contract the surety is released, but that principle does not apply in this case. Whatever change of contract there was, it was done by the court, and the principal was a party, and, furthermore, that rule is for the protection of the sureties and those claiming under them, and not for the principal, who was a party to it, or those parties who claim under or through the principal.

I recommend that the mortgage be foreclosed; that the land be sold by the clerk of court and the proceeds applied to the said debt of one thousand four hundred and seventy-six and 86-100 dollars; and I further recommend that the plaintiffs' attorneys be paid out of the proceeds a fee of one hundred dollars, and after paying the said debt and fee and the costs of this action, the surplus, if any, to be paid to the defendant.

*Messrs. Boyd & Brown*, for appellants.

*Mr. E. Keitt Dargan*, contra.

November 13, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. By the will of James Newberry, certain property was given to trustees to hold for his daughter, Jane Elizabeth Scaff, for life, and after her death to be equally divided amongst her children. The trustees named in the will having declined to accept the trust, one Isaac J. Newberry was, by proper proceedings in the Court of Equity, duly appointed trustee in the place of those named in the will, and as such entered into bond, with the plaintiff, Reuben Beasley, and Giles Carter, the other plaintiff's intestate, as his sure-

ties, conditioned for the faithful performance of the duties of his trust. Shortly afterwards, the said Isaac J. Newberry executed a mortgage of a tract of land to the said Beasley and Carter, a copy of which is set out in the "Case;" and as this appeal turns largely upon the proper construction of the terms of that mortgage, it is proper that the same should be set out here substantially, omitting only the formal parts thereof. Its recital is as follows:

"Whereas, Giles Carter and Reuben Beasley  *  *  *  did this day sign and execute, as my security as [on] a trusteeship bond to T. B. Haynesworth, commissioner in equity for Darlington District, for the penal sum of two thousand four hundred dollars, conditioned that the said I. J. Newberry shall and do well and truly discharge all the duties which may devolve upon him as trustee for Mrs. E. Jane Scaff, wife of Riley Scaff, and the children of said E. Jane Scaff. Now know ye, that I, the said I. J. Newberry, for the purpose of securing the said Giles Carter and Reuben Beasley free and harmless from any loss which they may sustain on account of their being my security on said bond as aforesaid, and for and in consideration of the sum of five dollars.  *  *  *  The condition of the above bargain and sale is this: that if I, the said I. J. Newberry, shall keep and save the within named Giles Carter and Reuben Beasley harmless from any loss which they may sustain by their being my security as aforesaid, then the above sale shall be null and void; otherwise it shall remain in full force and virtue. And it is agreed by and between the parties aforesaid, that the said I. J. Newberry is to have and retain peaceable possession of all and singular the premises within mentioned until the said Giles Carter and Reuben Beasley shall sustain loss by being my security as aforesaid. And in the event that they should be injured by being my security as aforesaid, if the within mentioned premises can be sold for more than the amount which they, the said Carter and Beasley, may have paid for me, that then, and in that event, the said Carter and Beasley shall sell and dispose of said premises, returning the overplus, if any, after paying all liabilities and costs, to said I. J. Newberry or his heirs and assigns."

This mortgage was duly recorded on the 25th of April, 1860. Subsequently the land covered by this mortgage came into the possession of the defendant, William D. Newell, through intermediate purchasers from said Isaac J. Newberry, under a deed dated 4th of December, 1878.

Two proceedings were instituted in the Court of Probate, the first being a petition filed by the said E. Jane Scaff on the 7th of September, 1872, setting forth that she was only entitled to the interest of the trust fund for life, with remainder to her children, and praying that the trustee, I. J. Newberry, be empowed to pay over to such of the children as were then of age, and to the minors as each became of age, their respective shares of the trust fund, she, the said E. Jane Scaff, being willing to make such surrender of her life interest. The trustee concurred in this petition, and joined in the prayer thereof. Accordingly, the judge of probate, on the same day, made an order granting the prayer of the petition, and in accordance therewith the trustee paid over to the two children, who were then of age, their shares in the trust fund. The other proceeding was a petition filed by the other children and Mrs. Scaff on the 15th of March, 1886, setting forth the proceedings under the previous petition; that these children had now become of age, and that the trustee had failed to pay to Mrs. Scaff any interest due her since the 1st of January, 1873, and praying that the trustee should account for his actings and doings as such, and pay over to the petitioners the amounts found due them respectively. Whereupon a hearing was had before the judge of probate, who rendered his decree, adjudging that the trustee was indebted to Mrs. Scaff in the sum of $650.04, arrears of interest, and was likewise indebted to the other petitioners in the sum of $403.36, to be equally divided between them; and he was ordered to pay the said amounts forthwith. Mrs. Scaff and her children, through their attorney, made demand upon the trustee for the payment of the money thus found to be due, which proving to be fruitless, demand was made upon the plaintiff Beasley and the representative of Carter, deceased, as sureties on the bond of the trustee; whereupon the mortgage above mentioned was put into the hands of the attorney for

foreclosure, who commenced action for that purpose on the 4th of October, 1886.

The issues in the action were referred to a referee, who made his report (a copy of which should be incorporated in the report of this case), wherein, after finding the facts substantially as above stated—that one of the sureties, Beasley, was absent from and resided beyond the limits of this State, that the other surety, Carter, had died insolvent—and that the defendant was a purchaser with notice—he found as matter of law, that the plaintiffs were entitled to have foreclosure of the mortgage even though they had paid nothing for their principal, and recommended judgment accordingly.    To this report the defendant filed the several exceptions set out in the "Case," and the same came before his honor, Judge Norton, who rendered the following judgment: "There are no exceptions to the referee's findings of fact in this case, and they are adopted; and I agree with him in his conclusions of law except two: 1st. I construe the mortgage given by I. J. Newberry to be a special agreement to repay his sureties any moneys which they should have been required to pay for him.   The use of the word 'loss,' without more, would have entitled the sureties to the relief sought if the proper parties were before the court, but the expression, the amount which they may have paid for me, as synonymous with 'injury,' which had just been used as synonymous with 'loss,' leads me to the interpretation above announced, which seems more conclusive, because it is not until that event that they are authorized to sell the mortgaged premises.    And 2d. The Probate Court had no jurisdiction, either to call the trustee to account, or to pass the order authorizing and requiring him to anticipate the payment of the *corpus* of the trust estate.    The exceptions of the defendant to the referee's report are overruled or sustained in accordance with the above opinion.   It is adjudged, that the complaint be dismissed, without prejudice to the right of plaintiffs or any other person interested, to proceed in such manner as they may be advised, to attain the object of this action."

From this judgment plaintiffs appeal upon the several grounds set out in the record, which need not be repeated here,

as the appeal really makes but two questions: 1st, as to the construction of the mortgage; 2d, as to the question of the jurisdiction of the Court of Probate.

Ever since the case of *Tankersley* v. *Anderson*, 4 DeSaus., 44, it has been regarded as the settled law of this State, that a surety who holds a mortgage or other collateral security given him to indemnify him against loss by reason of his suretyship, may proceed to enforce such mortgage or other security, as soon as he becomes endangered and before actual payment of the debt for which he has become security. This doctrine has been fully recognized as late as the case of *Hellams* v. *Abercombie*, 15 S. C., 110. Indeed, we do not understand that the Circuit Judge disputes it, for he rests his conclusion solely upon the terms of the mortgage, which he construes to be nothing more than a special agreement to pay whatever amount his sureties may have paid for him, and not a mortgage of indemnity.

So that our first inquiry is whether the judge erred in his construction of the terms of the mortgage. It cannot be denied that this instrument down to its last sentence is an ordinary indemnity mortgage. After reciting the fact that Carter and Beasley had become his sureties on the trusteeship bond, the mortgagor declares, in the most explicit terms, that he gives the mortgage "for the purpose of securing the said Giles Carter and Reuben Beasley free and harmless from any loss which they may sustain on account of their being my security on said bond as aforesaid." It would seem that language could not express more clearly the real intention of the parties to this instrument, to make an ordinary mortgage of indemnity. It is urged, however, that the last clause in the mortgage converts it into a mere special agreement to repay the sureties any money which they may have been required to pay for the mortgagor, and hence that the sureties could not maintain their action without showing that they had actually paid something. It is very obvious that the language used in the last clause of the mortgage does not very clearly express the manifest intention of the parties; for if that language be literally construed, the sureties, even if they had

paid the full amount of the bond, could not proceed to sell the mortgaged premises, unless the same could be sold for more than the amount thus paid. The language is: "And in the event that they (the sureties) should be injured by being my security as aforesaid, *if the within mentioned premises can be sold for more than the amount which they, the said Carter and Beasley, may have paid for me, that then and in that event, the said Carter and Beasley shall sell and dispose of said premises, returning the overplus, if any, after paying all liabilities and costs, to said I. J. Newberry, or his heirs and assigns."*

Under a literal construction of this language, the sureties could not sell the mortgaged premises, even to reimburse themselves for any money they may have paid, unless the mortgaged premises could be sold for more than the amount thus paid; for the power of sale is only conferred *"if the within mentioned premises can be sold for more than* the amount thus paid," and it is only *"then and in that event"* that the power of sale is given. But it is very obvious that no such construction could be adopted, as that would be so totally at variance with the whole tenor and manifest object of the instrument, as to show that such cannot be the proper construction. Indeed, it would border on absurdity to hold, that if the mortgaged premises could not be sold for more than an amount which would be a single dollar less than the amount paid by the sureties, and thus defeat the manifest and declared purpose of the mortgage, and yet, if sold for a single dollar, or even five cents, more than such amount, the sale would be valid. It is absolutely necessary, therefore, that some other than a literal construction of this last clause should be adopted. What, then, is the proper construction of this paper? As is well said by Mr. Justice McGowan in the case of *Anderson* v. *Holmes*, 14 S. C., at page 165, where a similar attempt was made to control the construction of a mortgage by certain words found in the closing sentence of the mortgage: "The intention of the parties to make a mortgage is clear. The object of construction is to ascertain what the parties meant by the terms and expressions used, and where the intent can be clearly and distinctly ascertained, it will prevail, not only in cases in which it is not fully and clearly

24            BEASLEY *v.* NEWELL.

_____
                Opinion of the Court.            [40 S. C.
_____

expressed, but even when it contradicts particular terms of the agreement. The general intention, to be collected from the whole context and every part of a written instrument, is always to be preferred to the particular expression."

Guided by this rule, let us look at the instrument which we are called upon to construe. The instrument is in the form of a mortgage of indemnity, and its declared purpose is to save the sureties harmless from any loss which they may sustain by reason of their suretyship. All the terms of the instrument down to the very last sentence are in conformity to this declared purpose. Can the particular expression used in the last clause be allowed to control and, in fact, destroy the general intention? The authority just cited says no. Besides, as we have seen, the language used in the last clause cannot, with any sort of propriety, be given a literal construction, and, therefore, some other must be adopted; and what other more appropriate than that which will make it conform to the manifest and declared intention in the previous portion of the mortgage? Indeed, we think that the sole object of the last clause was to provide for the payment to the mortgagor or his assigns of any balance of the proceeds of the sale of the mortgaged premises which might remain after paying the amount of the mortgage debt—so to speak—and the costs and expenses of enforcing the mortgage; and this accounts for, what would otherwise be the very extraordinary provision (to use no stronger term), authorizing a sale only in the event that the mortgaged premises could be sold for more than the amount paid by the sureties.

Again, it is a well settled doctrine of equity, that a creditor is entitled to avail himself of any security which may be held by the sureties to insure the payment of his debt; but if the security held by the sureties in this case could not be enforced until the sureties have paid their liability on the bond of their principal, the result might, and probably would, be, in this case, that the beneficiaries of the trust would lose the benefit of this equity, and the declared object of the mortgage be defeated. For it appears that one of the sureties has died insolvent and the other is beyond the jurisdiction of the court; and hence it is not at all likely that anything ever-

would be paid by the sureties, or either of them. It seems to us, therefore, that the Circuit Judge erred in the construction which he put upon the mortgage.

Next, as to the question of the jurisdiction of the Court of Probate. Under the facts as found in this case, we do not deem it necessary to inquire into that question; for the trustee, Isaac J. Newberry, having submitted himself to the jurisdiction of that court, and having acted under the judgment first rendered, by paying over to such of the children as were then of age their shares of the trust fund, as directed by the decree of the judge of probate, and having acquiesced in the second decree by not raising the question of jurisdiction or appealing from the decree, is estopped from now disputing the jurisdiction of the Court of Probate (*Finley* v. *Robertson,* 17 S. C., 435); and the defendant, who claims under him and is only entitled to his rights in the premises, would likewise be estopped. It may be that the defendant might still be at liberty to surcharge and falsify the account as taken in the Court of Probate; but this does not appear to have been attempted, and as no question of this kind seems to have been raised in the Circuit Court, we are not at liberty to consider it.

There seems to have been some question raised before the referee as to whether the sureties were not discharged by an alleged change in the contract, but as that question was determined by the referee adversely to the defendant, and his finding in that respect was confirmed by the Circuit Judge, to which no exception has been taken, the question is not before us, and we are not to be regarded as determining anything upon that subject.

It seems to us, however, that inasmuch as one of the sureties has died insolvent, and the other is beyond the jurisdiction, the ends of justice require that the complaint should be amended so as to make the beneficiaries of the trust fund parties, in order that the proceeds of the sale of the mortgaged premises, or so much thereof as may be necessary to satisfy their claims, may be paid to them directly, instead of to the surviving surety and the representative of the deceased insolvent surety, after making proper provision for the pay-

ment of their counsel fees. The trustee, Isaac J. Newberry, may also be made a party, if it is desired to raise the question, whether the defendant can now be permitted to surcharge and falsify the account heretofore taken in the Court of Probate.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to that court for the purpose of carrying out the views herein announced.