## EX PARTE WINKLER.

### IN RE GERALD v. GERALD.

1. A mortgage and a decree for the foreclosure thereof, described the mortgaged premises as "all that piece, parcel, or tract of land in the town of C., known and designated in the plan of said town as lot No. 733, fronting on B street and running back on D street, whereon is situated the two story building formerly used and occupied by G. as a store house." Lot No. 733 measured 100 x 382 feet, and had on it three store houses, with a vacant lot behind, the corner store house, measuring 43 x 207 feet, having alone been occupied by G. *Held*, that the mortgage, the decree, and the sale covered the entire lot No. 733.

2. If any party to the action for foreclosure had a senior mortgage on a portion of this lot, and failed to assert it in that action, he cannot assert it against a purchaser under the decree of foreclosure therein.

3. A purchaser at a foreclosure sale obtained a rule against the defendant in possession to show cause why he should not be attached for failing to surrender possession of a portion of the mortgaged premises. Return was made, claiming that the property not surrendered was not embraced in the decree of foreclosure. *Held*, that no question of title to real property was involved, and that the matter was properly determined under a rule to show cause.

4. The appellee cannot demand that this court shall sustain a Circuit decree upon grounds other than those upon which the Circuit Judge

based it, unless he has given proper notice to the appellant of the grounds so to be taken, and of his intention to urge them.

5. A judgment of foreclosure and sale is not a judgment for the delivery of possession of real property, within the meaning of section 305 of the Code, to be enforced only by execution ; but is a judgment of sale, to be enforced by rule to show cause and attachment. *Gerald* v. *Gerald*, 30 S. C., 353, stated.

Mr. Justice McGowan, *dissenting*.

Before ALDRICH, J., Kershaw, February, 1889.

This was an appeal by Cornelius L. Winkler, the purchaser at a foreclosure sale in the case of *Gerald* v. *Gerald*, from an order of the Circuit Judge refusing to require the defendant to surrender possession, under a rule to show cause. The opinion states the case.

*Mr. C. L. Winkler*, for appellant.

*Mr. J. T. Hay*, contra, contended that the question of title was involved, and there being doubt, the matter could not be determined under proceedings by rule to show cause. 19 *S. C.*, 19 ; 2 *Bail.*, 620 ; 2 *McMull.*, 150 ; 12 *Rich.*, 499 ; 17 *S. C.*, 119 ; *Code*, § 274. There are other grounds upon which the Circuit decree may be sustained. 30 *S. C.*, 232. This being a judgment for the delivery of real property (30 *S. C.*, 353), execution is the proper mode of enforcing obedience, and not attachment. *Code*, § 305 ; 4 *Wait Prac.*, 175 ; 28 *S. C.*, 53.

July 1, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER. Under proper proceedings for the foreclosure of a mortgage of real estate, the plaintiff obtained a judgment of foreclosure and sale of a certain lot in the town of Camden, South Carolina, and at the sale the appellant became the purchaser, and having complied with the terms of sale, received a deed from the master, and demanded possession from the respondent, George W. Witte, who was in possession under a deed from the sheriff, who had sold the mortgaged premises under an execution to enforce a judgment against the mortgagor, junior to the plaintiff's mortgage. In response to this demand, the respon-

dent surrendered to the appellant that portion of the lot, situate on the corner of Broad and DeKalb streets, having a front of 43 feet on Broad street, and running back on DeKalb street 207 feet, whereon is situated the two-story building formerly used and occupied by W. C. Gerald as a store house, but declined to surrender the possession of the balance of the lot on which two other store houses formerly owned by W. C. Gerald stand.

Thereupon the appellant gave notice to respondent of a motion, based upon two affidavits, which will be hereinafter more particularly stated, for an order to put the appellant in possession of the entire mortgaged premises, sold under the said judgment of foreclosure. This motion was heard by his honor, Judge Fraser, who refused the motion, "holding that the judgment of foreclosure and sale, with direction to the master to execute a deed of the premises so sold, to be in all respects the equivalent of an order to deliver possession," but he granted an order requiring the respondent, George W. Witte, to show cause "why he should not be attached for failing and refusing to deliver to Cornelius L. Winkler, the purchaser, all the tract or lot of land sold under the proceedings in this case, and conveyed by the master for this county to said Cornelius L. Winkler, a demand for such possession having been made upon him, as appears by the said affidavits." To this rule Witte made a return, which will be hereinafter more particularly stated, on the hearing of which his honor, Judge Aldrich, holding that the return raised a question of title to real estate, which, in his judgment, could not be tried on a rule to show cause, granted an order discharging the rule with costs.

From this order Winkler appeals upon the several grounds set out in the record, which, in effect, impute error to the Circuit Judge: 1st. In holding that the return raised a question of title to real estate. 2nd. In refusing to require the respondent to surrender to the appellant the possession of the entire lot. 3rd. In failing to leave the return open, and framing an issue to be tried by a jury to determine the amount of land sold under the judgment of foreclosure and bought by appellant.

It appears from the affidavits served with the notice of the motion, in addition to the facts above stated, that in the judgment of foreclosure and sale, under which appellant claims, the land

ordered to be sold is described as follows : "All that piece, parcel, and tract of land, lying, being, and situate in the town of Camden, in said county and State, known and designated in the plan of said town as lot number seven hundred and thirty three (733), fronting on Broad street and running back on DeKalb street, whereon is situated the two-story brick building formerly used and occupied by W. C. Gerald as a store house" ; that the dimensions of said lot number seven hundred and thirty-three (733), as ascertained by a surveyor, are one hundred feet fronting on Broad street, and a depth of three hundred and eighty-two feet on DeKalb street, designated on a plat made by said surveyor and attached to his affidavit, which plat also shows that portion of said lot surrendered by respondent to appellant as having a frontage on Broad street of only forty-three feet, and a depth of only two hundred and seven feet on DeKalb street.

In the return to the rule, none of these facts are denied, but the respondent therein claims that the only premises sold under the mortgage and purchased by appellant was that portion of lot number 733 which has been surrendered to the appellant ; "that W. C. Gerald had on his lot on Broad street three (3) stores : 1st, that at corner of Broad and DeKalb streets, formerly occupied by him as a store house, of which C. L. Winkler, attorney, is the purchaser, and of which he is now in possession ; 2nd, a brick store, with tin roof, upon which, with the lot upon which it is situated, W. C. Gerald executed a mortgage in favor of Witte Bros. nearly one year before the mortgage to Fannie C. Gerald ; 3rd, a wooden store, next to the premises of the Baptist church ; that these three stores were all used and occupied by W. C. Gerald as separate premises for years preceding the mortgage to his wife, Fannie C. Gerald ; and that the vacant lot on DeKalb street, now also claimed by C. L. Winkler, attorney, was also used and held by W. C. Gerald as property separate and apart from that mortgaged to his wife" ; and that when the action to foreclose the mortgage, under which appellant claims, was commenced, respondent was in possession of the entire lot known as number 733, embracing all three of the store houses, and the vacant lot above mentioned, under a deed from the sheriff to him as a purchaser at a sale under judgments against W. C. Gerald.

Respondent, George W. Witte, having been a party defendant in the principal action in which this proceeding *in re* has been taken, he is, of course. bound by the judgment therein, and cannot now raise any question which was, or should have been, raised in that case. It does not appear that any question was there raised as to what property was covered by the mortgage, or as to any antecedent claims to that mortgage. either by respondent, Witte Bros., or any one else ; but, on the contrary, it does appear that the only question then raised was as to the validity of such mortgage, and that question was adjudged against respondent ; the mortgaged premises were ordered to be sold, and the proceeds applied to the debt due to the mortgagee, Fannie C. Gerald, as appears by the judgment set out in the "Case," which, on appeal, was affirmed by this court. *Gerald* v. *Gerald*, 28 S. C., 442. So that the only question that could be raised under this proceeding is, what premises were ordered to be sold, and what were, in fact, sold and conveyed to the purchaser.

It is conceded that the entire mortgaged premises were sold and conveyed to appellant. and we have in the judgment of foreclosure, set out in the "Case," a full description of the mortgaged premises, which has been copied above. We learn from that description, that the property which was ordered to be sold, and which was in fact sold, was : "All that piece, parcel, or tract of land [not a portion of it]. lying, being, and situate in the town of Camden, in said county and State, known and designated in the plan of said town as lot number seven hundred and thirty-three (733). fronting on Broad street and running back on DeKalb street, whereon is situated the two-story building formerly used and occupied by W. C. Gerald as a store house." When the court orders "*all*" of a certain piece of land, known and designated on the plan of an incorporated town by a specified number, to be sold, it is difficult to conceive what warrant there would be for saying that only *part* of such lot was intended to be sold. Every one knows that it is very commonly, if not universally, the case that incorporated towns are divided into lots, and designated by numbers on the plans of such towns, for the very purpose of identifying the same ; and it seems to us too clear to admit of question, that when the court orders a sale of a lot, more espe-

cially *all* of a lot, designated by its number, it must be regarded as ordering the sale of the entire lot, and not a part of it, unless there is something to indicate that the intention was to sell only a part.

There is certainly nothing whatever in the description of the mortgaged premises, as set forth in the judgment of foreclosure in this case, indicating any such intention. The language in the concluding part of the description—"whereon is situated the two story building formerly used and occupied by W. C. Gerald as a store house"—is wholly insufficient for that purpose. There is nothing more common than to find in the description of real estate conveyed, similar superadded words—as, for instance, the tract of land whereon the dwelling house of the grantor, or the defendant in execution, is situated—which, so far as we know, were never held sufficient to confine the estate conveyed to that portion of the land actually covered by such dwelling house itself, or its appurtenances. Indeed, the case of *Bratton* v. *Clawson* (3 Strob., 127) shows that the rule is exactly the other way, and that where land is described in a conveyance by certain definite boundaries, the further description of it as "the land on which the defendant resided," is merely incidental, and may be rejected.

The present case is much stronger than that, for the question there was whether the gin house of the defendant in execution had been sold by the sheriff, and as it appeared that the gin house was located upon a piece of land which did not form originally a part of the tract upon which the defendant resided, but had been subsequently bought for the purpose of erecting the gin house, it was contended that that portion of the description—"the defendant's land, whereon he resides"—limited the land sold to the tract on which the defendant's dwelling house was located, and did not include the piece of land on which the gin house stood. But as the sheriff's deed, following the levy, specified boundaries which included the gin-house, the court held otherwise, as above indicated. Frost, J., in delivering the opinion of the court, used this language: "But the deed is conclusive evidence of the plaintiff's right to the gin house. It does not present a case of latent ambiguity, which parol evidence may be received to explain. The description of the land, which seems

certain and without ambiguity for anything appearing on the face of the deed, is not rendered uncertain by extrinsic facts. The land is identified by the boundaries mentioned in the deed. If the deed had contained no other description of the land than as that on which Strait resided, parol evidence would have been proper to locate and show its extent. But when it is designated with certainty by definite boundaries, the further description of it as the land on which Strait resided is merely incidental, and may be rejected. On this subject, the rule laid down in *Sheppard's Touchstone* is, 'that when there is in the first place a sufficient certainty and demonstration, and an additional term of description, which fails in point of accuracy, it shall be rejected as surplusage.' Visible marked lines and natural objects present the greatest certainty. These do, in effect, enter into a description by boundaries."

That case, as we have said, is much weaker than the present, for there the superadded words of description—the land on which Strait resided—tended to so limit the thing conveyed as not to include the gin house, while here the superadded words—"whereon is situated the two-story building formerly used and occupied by W. C. Gerald as a store house"—have no such tendency, but, on the contrary, are entirely consistent with the preceding and more definite terms of description; for it is conceded that the said store house is, in fact, situated on lot No. 733, which being described as a lot known and designated on the plan of the town, is quite as specific and certain as if the plan or plat had been annexed instead of referred to merely, and there is nothing in the superadded words at all inconsistent with the previous and more precise description, and therefore nothing to qualify or limit such previous description. If the intention had been to limit the property mortgaged and the premises ordered to be sold to that portion of the lot No. 733 which was covered by the store house mentioned, it would have been very easy and most natural to say so. But such is not the language used, and, on the contrary, the language is "*all*" that parcel of land known as lot No. 733, and we do not see how there can be a doubt that the intention was to embrace the entire lot, and not a part of it merely.

We do not see how the facts stated in the return, that there

13—31

were two other store houses located on the same lot, one of which had been made the subject of a previous mortgage, can affect the question. It is conceded that W. C. Gerald was originally the owner of the entire lot known as No. 733, including the three store houses mentioned, and as such he had the right to mortgage either the whole or any part of the lot, and what his intentions were in regard to a given mortgage must be determined by the terms he has used in such mortgage. Here we have a mortgage in which such terms are used as conclusively show that his intention was to mortgage the entire lot, and not a part of it merely, and if Witte or Witte Bros. held a senior mortgage upon a portion of the lot covered by one of the stores, they being parties to the action for foreclosure, should have then set up such mortgage, and having failed so to do, it is too late for them to do so now.

Indeed, we do not understand from the return that any such claim is now set up, as the respondent manifestly bases his right to the possession of that portion of the lot which he has refused to surrender upon his purchase at sheriff's sale under judgments junior to the mortgage under which appellant claims. We suppose, therefore, that the statement in the return in regard to the senior mortgage on one of the store houses located on the lot was made merely to show that the original owner, W. C. Gerald, had on a previous occasion mortgaged only a part of the land. Assuming that to be so, the fact, that the original owner had upon one occasion given a mortgage on a part of the lot, certainly has no tendency whatever to show that in making the mortgage under which appellant claims, he did not intend to embrace the whole of the lot. That must be determined by an examination of the terms of the mortgage, which, as we have seen, conclusively show an intention to include the whole of the lot, and not by what the mortgagor may have done on a previous occasion. It seems to us, therefore, that so much of the several grounds of appeal as impute error to the Circuit Judge in refusing to hold that appellant was entitled to the possession of the entire lot known and designated on the plan of the town of Camden as lot No. 733, the limits of which were clearly and indisputably defined, must be sustained.

It is urged, however, that the return raised a question of title

to real estate which could not be determined on a rule to show cause, and it was upon this ground that the Circuit Judge acted in discharging the rule. In this we think there was error. The return does not, and could not, set up any claim of title paramount to the mortgage under which appellant claims. The respondent having been a party to the proceedings to foreclose that mortgage, is, of course, bound by the judgment therein; and the only question now is, what was that judgment, and that must be determined by its terms. Or, to be more precise, the only question is, what property was ordered to be sold by that judgment, and what was sold under that judgment. The return does not raise any issue of fact in reference to this, and could not well do so, but simply claims that, under a proper construction of the terms of that portion of the judgment in which the property ordered to be sold is described, only a part and not the whole of the lot was ordered to be sold. We are unable to discover anything in the return which can be regarded as raising an issue of title to real estate.

It does not even raise the question, which, for the first time, was raised in argument here, as an additional ground upon which the order discharging the rule might be sustained, though no notice of such additional ground, as required by the proper practice, was given, to wit, that the court has no power, under a rule to show cause, to require a person in possession of mortgaged premises to surrender the possession to the purchaser at a foreclosure sale, where the person in possession was a party to the action for foreclosure. And even if such position had been properly taken, we do not see how, under the case of *Trenholm* v. *Wilson* (13 S. C., 174), it could have been sustained; for there it was held that a purchaser of the mortgaged premises, at a foreclosure sale, could, by rule to show cause, require the widow of the mortgagor to surrender the possession to him, although she was in possession, claiming that the sale was invalid, that she had a valid claim of dower in the premises, and that her right to retain possession could not be determined under a rule to show cause. Indeed, as was said by that eminent jurist, Chancellor Kent, in *Kershaw* v. *Thompson* (4 Johns. Ch., at page 612): "It does not appear to consist with sound principle, that the court, which has exclusive authority to foreclose the equity of

redemption of a mortgagor, and can call all the parties in interest before it, and decree a sale of the mortgaged premises, should not be able even to put the purchaser into possession against one of the very parties to the suit, and who is bound by the decree." In the comparatively recent case of *LeConte* v. *Irwin* (23 S. C., 106), the propriety of a proceeding by a rule to show cause, in a case like this, is recognized.

In fact, if a mortgagor, or a purchaser from him, who is a party to the action for foreclosure, should be .permitted to force a purchaser at the sale, under the judgment of foreclosure to an action of ejectment, to recover possession of the mortgaged premises by surrendering such portion of the mortgaged premises as he may see fit, and retaining the balance under a claim that such balance was not covered by the mortgage, it is very manifest that the value of that class of securities would be very much impaired, and tedious, expensive, and unnecessary litigation encouraged. It seems to us, that where a mortgagor or his vendee, who is a party to the action for foreclosure, in good faith desires to contest the amount of property covered by the mortgage, the proper time to raise such question is before the judgment of foreclosure is obtained, and not afterwards, when he is ruled to show cause why he should not surrender possession to the purchaser, though it may be possible that cases may arise in which such question may afterwards be raised. But in this case, it is sufficient for us to say that the return in this case, resting, as it does, solely upon the ground that the portion of the lot which respondent refuses to surrender was not embraced in the order of sale, when we think it clearly is so included, raises no question of title to real estate, and that the Circuit Judge erred in ruling otherwise.

As intimated above, the respondent, in the argument here, has undertaken to sustain the order appealed from upon another ground than that upon which it was placed by the Circuit Judge, which, so far as appears, was not taken in the court below. While it is entirely competent for the respondent to do this, provided proper notice be given, according to the practice prescribed in *Weinges* v. *Cash* (15 S. C., 44), and other cases to the same effect, yet where, as in this case, no such notice is given, the question thus raised is not properly before us, and according to

strict practice would not be considered. But inasmuch as the question raised is an important one, and is rested upon a misconception of the former decision of this court, upon another branch of this same case (*Gerald* v. *Gerald*, 30 S. C., 353), we will *ex gratia* consider it. The point raised is, that under section 305 a judgment for the delivery of real or personal property can be enforced only by execution, and not by attachment following upon a rule to show cause, and it is supposed that, in the former decision just alluded to, this court held that a judgment of foreclosure was a judgment for the delivery of real property, and hence, that a judgment in a case like this cannot be enforced by attachment, but can only be enforced by execution.

Aside from the fact, that this question has already been expressly decided in the case of *Trenholm* v. *Wilson, supra,* and that the proceeding by rule to show cause was plainly recognized in *LeConte* v. *Irwin, supra,* it seems to us that the same result would be reached even were the question still an open one. Without stopping now to consider whether a judgment for the delivery of real property can only be enforced by execution, inasmuch as the language of the section is permissive—"*may* be enforced"— and not imperative, it is sufficient for us to say that we do not regard a judgment of foreclosure and sale of mortgaged premises as a judgment for the delivery of real property, but, on the contrary, is a judgment for the sale of such property, unless the debt is paid within a prescribed time. When the sale has been made, and the person in possession, if a party to the proceeding, refuses to surrender the same to the purchaser, the court, by virtue of its inherent power, to enforce obedience to its mandates, requires such person to complete the sale—the thing adjudged to be done— by surrendering possession of the thing sold. This is a very different thing from a judgment for the delivery of real or personal property from one person to another. The court having all the parties in interest before it, and having power to order a sale of all of such interests, and having made such order, must necessarily have the power to carry its order into full effect by requiring the party in possession to surrender the same to one whom the court has invited to buy.

It is a mistake to suppose that, in the former decision, it was

held that a judgment of foreclosure was a judgment for the delivery of the mortgaged property. The question in that branch of the case was whether this same respondent could be made liable on an undertaking, into which he had entered, for the purpose of staying the sale under the judgment for foreclosure, pending the appeal from such judgment, whereby he had undertaken to pay the value of the use and occupation of the mortgaged premises pending such appeal; and it was then argued by the present respondent, that a judgment for foreclosure was not a judgment for the delivery of real property, and, therefore, under section 352 of the Code, it was not a case in which such an undertaking could be required. But this court held that the provision in that section for the giving of an undertaking was not confined to cases in which the judgment was for a *delivery* of real property, but embraced also cases in which the judgment was for a *sale* of such property, and that a judgment for foreclosure, being a judgment for the *sale* of real property, the case fell within the provisions of the section, and the undertaking was properly required.

In that case, the court, after quoting the language used in section 352, said: "This language shows that the intention was to embrace appeals from judgments of foreclosure, for that is a judgment directing the sale of real property, and the language of the section—'if the judgment appealed from direct the sale or delivery of possession of real property'—plainly indicates the intention to embrace two classes of judgments, those which direct a sale, as well as those which direct delivery of possession." This shows very clearly that the court did not then decide that a judgment of foreclosure was a judgment for the *delivery* of real property, but was a judgment for the *sale* of such property. A judgment of foreclosure does not entitle the party, in whose favor it is rendered, to demand the delivery of any real property, but only entitles him to have a sale thereof made. After the sale has been made by the order of the court, the purchaser then becomes entitled to the aid of the court in obtaining possession of that which the court has ordered to be sold, where such possession is withheld by a person who was a party to the proceedings under which the sale was made. It seems to us, therefore, that, in any view of the case, the Circuit Judge erred in discharging the rule.

The judgment of this court is, that the order appealed from be reversed, and that the case be remanded to the Circuit Court for such further proceedings as may be necessary to carry out the views herein announced.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCGOWAN, *dissenting.* It is manifest that the description of the property mortgaged was not set out with care and particularity. There were three stores on lot No. 733, in the plan of the town, all belonging to the same person, but used entirely separate from each other. Without going into the argument, I incline to think that the whole lot in the plan was referred to merely to indicate the general locality of the property mortgaged; and that the parties intended to place under the mortgage only so much of that lot as belonged to the separate lot "whereon is situated the two story building formerly used and occupied by W. C. Gerald as a store house." Or, at least, there is so much doubt about it, that, in the interest of justice, the parties should have an opportunity to try the question in an issue framed for that purpose.