14755

DUNLAP & DUNLAP v. ZIMMERMAN *ET AL.*

ZIMMERMAN v. CENTRAL UNION BANK OF SOUTH CAROLINA *ET AL.*

(199 S. E., 296)

*Messrs. Melton & Belser* and *J. Edwin Belser,* for appellants,

*Messrs. Thomas, Lumpkin & Cain,* for respondent.

October 26, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The Central Union Bank of South Carolina, a South Carolina banking corporation, did not reopen for general business after the banking holiday which commenced on

March 4, 1933, and was thereafter declared insolvent and ordered into liquidation by the Governor of South Carolina, acting with the advice of the State Board of Bank Control pursuant to the emergency banking laws of this State. Act No. 622, p. 1174, approved March 9, 1933, Act No. 235, p. 296, approved April 14, 1933, and Act No. 350, p. 489, approved May 16, 1933. By these the Governor of the State, acting with the advice of the State Board of Bank Control, was given plenary control and supervision of the banks of the State, and vested with power to order insolvent banks into liquidation under conservators. (By later Acts the Board alone was given this power.) Pursuant to these enactments, S. J. Zimmerman was, on March 20, 1933, appointed as conservator of the bank, and took over the control of its affairs. J. Edwin Belser was appointed general counsel for the conservator, and on May 25, 1933, the law firm composed of Herbert M. Dunlap and Walter M. Dunlap, was named as associate counsel. The employment of this latter firm continued until the death of Mr. Herbert M. Dunlap on January 15, 1934.

On October 3, 1933, Mr. J. Roy Barron was appointed as co-conservator by the Governor, acting with the advice of the State Board of Bank Control. Prior to the appointment of Mr. Barron, and on or about June 26, 1933, S. J. Zimmerman, as sole conservator, instituted an action, as permitted by the emergency banking laws, in the Court of Common Pleas for Richland County, against The Central Union Bank of South Carolina and others, to obtain the instructions of the Court on certain matters. This action was in the nature of a general creditor's bill, and responsive to its allegations the Court issued its decree directing that all persons holding claims of any nature against the bank be called in and required to establish their demands, or else be barred; and restricting all creditors and claimants from bringing any separate action or actions

or proceeding against the bank or affecting its assets, save by proceeding in the pending action, which was left open.

The petitioner, Walter M. Dunlap, in his own right, and as surviving partner of the firm of Dunlap & Dunlap, filed his verified petition in this proceeding in which he prayed that the fees earned by his firm for services rendered the conservator be determined by the Court pursuant to the terms of Section 7855 of the Code of Laws of South Carolina 1932, or under the general powers of the Court sitting in equity; and alleged that the sum of $2,500.00 was a reasonable fee for general consultative legal work, and that a further fee of not less than $4,500.00 be allowed for legal services in preparing numerous abstracts of title to real estate and making reports thereon, an itemized list of the abstracts being attached to the petition. Prior to the filing of this petition, Mr. Dunlap had filed with the conservators a bill for the services rendered by his firm. This bill was submitted by the conservators to the State Board of Bank Control, which board refused payment, but offered to pay in full settlement the sum of $1,750.00.

Upon respondent's verified petition, his Honor, Judge Ramage, issued a rule requiring the appellants to give published notice, as required by Section 7855, to creditors and depositors of the bank of a hearing to determine and fix the fees of the respondent at the term of the Court of Common Pleas for Richland County commencing November 16, 1936. This notice was duly published by the conservators. Thereafter the conservators, appellants here, filed their return and answer, alleging, on information and belief, that the amounts claimed by the respondent for services rendered are excessive, and unreasonable; and further alleged that under the law of South Carolina the State Board of Bank Control was vested with *quasi*-judicial powers to determine and limit the amount to be paid as attorney's fees for services rendered, and that this board had theretofore fixed the fees in question in the sum of $1,750.00; and further pointed

out that no abuse of discretion by the board was alleged in the petition. The appellants prayed that the petition be dismissed, or in the alternative, that the executrix of the estate of Herbert M. Dunlap, deceased, be made a party by amendment.

The cause came on to be heard on November 17, 1936, before Judge Ramage, upon the petition and return, and he passed an order, after a full hearing, requiring the amendment of the petition by making parties, not only the executrix of the estate of Herbert M. Dunlap, but also the members of the State Board of Bank Control, and referred the cause of the Master of Richland County to take the testimony upon all issues arising under the proceedings filed or to be filed. From this order no appeal was taken. The executrix defaulted. The State Board of Bank Control answered, alleging that under a misapprehension of the law as to the authority of the board in the premises, it had theretofore fixed what it deemed a reasonable fee for the services of the respondent, but that it had since been advised by the attorney genenal that it is without authority to fix fees of attorneys employed, after the liquidation of a bank under receivership shall have been ordered.

It was further alleged by the board that it had no duties in the matter of fixing what fees are proper in this case, and should not be put to the expense and inconvenience of defending this suit.

The Master took voluminous testimony, and the cause was thereafter heard by his Honor, Judge Grimball, on the merits, on December 3, 1937, and resulted in a decree directing the conservators to pay to the respondent the sum of $2,000.00 for general services rendered, and the further sum of $2,750.00 for services rendered in the abstracting of titles, the Court holding that such amounts were reasonable and proper. However, shortly prior to the call of the case, the appellants, on November 13, 1937—nearly one year after the proceeding was begun—served a notice that

they would move the Court to dismiss the action, or in the alternative, to grant judgment in their favor, on the ground that the Court was without jurisdiction to pass upon the issues, because under the Act approved March 9, 1933, and subsequent laws, the Governor of the State or the State Board of Bank Control, is vested with exclusive power to fix or limit the liquidating expenses of banks becoming insolvent subsequent to said date. This motion was over-ruled by Judge Grimball by an order in which he held that the order of Judge Ramage dated November 17, 1936, from which no appeal was taken, was *res adjudicata* of the jurisdictional issue.

The primary question presented for this Court's determination in this appeal is whether, in view of the emergency banking laws and the employment of respondent thereunder, the Court below had jurisdiction to hear and determine the respondent's claim for legal services rendered in the liquidation of the bank; and, if so, the amount payable therefor.

The appellants contend that it was the legislative purpose and intent to vest the State Board of Bank Control alone with jurisdiction over the banks of the State and their liquidation, including the determination of liquidating expenses, to the exclusion of the Court.

We are met at the threshold with the jurisdictional question. The appellants challenge the holding of Judge Grimball wherein he held that the Court's jurisdiction of the subject-matter of the action was passed upon adversely to the appellants by Judge Ramage in his order of November 17, 1936, to which reference has been made.

We turn to the pleadings which were before Judge Ramage to determine what issues were presented to him. By Paragraph 2 of the return filed by the appellants it is alleged: "That under the law of the State of South Carolina the State Board of Bank Control was vested with *quasi*-judicial powers to determine and limit the amount to be

paid as attorneys' fees for services, and your respondents respectfully show unto the Court that the said Walter M. Dunlap heretofore petitioned the said Board of Bank Control for the allowance of fees for the services set forth in the petition herein, and the said board determined and allowed fees in the sum of $1,750.00, and no abuse of discretion by the said board is alleged or shown in the said petition."

The prayer of the respondent was that the petition be dismissed, or in the alternative, that certain other parties be brought in, to the end that the rights of all of the parties might be heard and determined in one proceeding. Judge Ramage did not dismiss the petition or complaint, but passed an order providing for the bringing in of new parties, and referred the cause.

Do the allegations which we have quoted present a challenge to the jurisdiction of the Court? In our opinion they do. As we construe the paragraph referred to, the claim is made that jurisdiction to determine and limit the amount to be paid as attorney's fees was vested in the State Board of Bank Control; that the board had already assumed jurisdiction, had determined the amount of the fees to be paid, and that as no abuse of discretion was shown, the action of the board in the premises was final. In his order, Judge Ramage makes no specific reference to jurisdiction, but necessarily his refusal to dismiss the complaint and reference of the issues, after providing for amendment to bring in new parties, must be considered as a determination of the question, because the Court proceeded to assume jurisdiction. Had he concluded otherwise, that is, that sole jurisdiction was vested in the State Board of Bank Control, a dismissal of the complaint would necessarily have followed.

The rule is often stated in general terms that a judgment is conclusive not only upon the questions actually contested and determined, but upon all mat-

ters which might have been litigated and decided in that suit. *Phillips v. Hill*, 116 S. C., 218, 107 S. E., 909; *Barfield v. Barnes*, 108 S. C., 1, 93 S. E., 425; *McDowall v. McDowall*, Bailey, Eq. 324, 8 S. C. Eq., 324. And this is undoubtedly true of all matters properly belonging to the subject of the controversy and within the scope of the issues. *Gerald v. Gerald*, 31 S. C., 171, 9 S. E., 792.

The estoppel of a judgment does not extend to matters not expressly adjudicated, and which can be inferred only by argument or construction from the judgment, except where they are necessary and inevitable inferences in the sense that the judgment could not have been rendered as it was without deciding such points, 34 C. J., page 913. The case aptly in point, illustrating this exception, is found in *Lawton v. Perry*, 45 S. C., 319, 23 S. E., 53. Supporting the same rule see *Sarratt v. Gaffney City Carpet Mfg. Co.*, 77 S. C., 85, 57 S. E., 616; *Greenwood Drug Co. v. Bromonia Co.*, 81 S. C., 516, 62 S. E., 840, 128 Am. St. Rep., 929; *Willis v. Tozer*, 44 S. C., 1, 21 S. E., 617.

After judgment was rendered by Judge Ramage, the question of jurisdiction, in our opinion, was no longer at issue in the cause, whether that judgment was correct or erroneous. Nothing but the revising hand of an appellate Court could have corrected the error, if error there was, in the ruling and adjudication of the Court of first instance. And from this judgment, the appellants did not protect themselves by an appeal. When, therefore, the cause reached Judge Grimball—the question of jurisdiction being no longer an open one—there was nothing left for him to do but to try the cause on its merits.

Appellants argue, however, that the question of the Court's jurisdiction of the subject-matter may not be lost, but may be raised at any time and place. This principle, of course, is firmly settled in this State, but it is not applicable in this appeal. The question of jurisdic-

tion may be raised once, but when the issue has been decided adversely to a party he cannot continue to raise it, in different stages of the trial. His remedy is to preserve his exception in the first instance, and his failure to do so forecloses the right to again raise it.

Where the jurisdiction of the Court is challenged and the question decided—whether specifically or by inevitable inference—a judgment on that issue unless reversed or set aside, is as conclusive and binding on all parties to the cause as the adjudication of the Court on any other question involved in the case. *State v. Adams,* 83 S. C., 149, 65 S. E., 220; *Beasley v. Newell,* 40 S. C., 16, 18 S. E., 224, 34 C. J., Sec. 1320, page 907, and cases cited in notes.

We have carefully read and considered the voluminous testimony taken in the cause, dealing with the question of the reasonableness and propriety of the counsel fees allowed and determined in the decree of Judge Grimball. This testimony runs through more than 200 pages of the record. The services rendered by the respondent's firm covered the period from May, 1933, to January, 1934. The firm of Dunlap & Dunlap during that period, under the head of general services as distinguished from the preparation of abstracts, was practically in daily consultation with the conservators and their employees at the Rock Hill branch of The Central Union Bank. The respondent, or his brother, Mr. Herbert M. Dunlap, was constantly being called into conference to advise upon urgent legal matters, and these conferences would last anywhere from thirty minutes to several hours. The Central Union Bank, while it had branches at other points, had conducted its largest business at Rock Hill and its environs. With reference to the preparation of abstracts, titles were examined in the counties of York, Lancaster and Chester. Involved in these examinations were at least fifty separate sources of title, and the total number of titles examined was sixty-three. The testimony supports the statement

found in the circuit decree that: "Mr. Walter M. Dunlap according to the testimony worked at the York Court House in York, S. C., with one stenographer as assistant, both day and night, and Sundays, and many nights sat up until eleven o'clock to complete this work in the time to which he was limited. His brother, Mr. Herbert M. Dunlap, hired a special stenographer and did work in Lancaster and Chester Counties, working late at nights in writing up the abstracts. The work could not be completed and special reports on titles were made showing that a complete examination of outstanding liens had not been finished when the abstracts were delivered. Final examinations were later made in the early months of 1934, wherein absolute opinion on the titles was given by Messrs. Dunlap & Dunlap."

Upon full consideration of the entire matter, we are not disposed to hold that there was an abuse of discretion in allowing the fees fixed in the order of Judge Grimball.

The conclusions we have announced would ordinarily render unnecessary a consideration of other questions raised by the appeal, but because, as suggested by appellants' counsel, they are of wide public interest, we shall proceed to pass upon them.

Is exclusive jurisdiction vested in the State Board of Bank Control under the emargancy banking laws, to fix or limit the fees of attorneys for an insolvent bank, in process of liquidation?

The State Board of Bank Control in its answer disclaims this power, but as stated by appellants' counsel, this disclaimer of jurisdiction cannot have the effect of making or changing the law, the construction of which is now before us.

Acts 622, p. 1174, and 235, pp. 296, 297, for the year 1933, vested the Governor with plenary power and control of all banks and the banking department.

On May 16, 1933, there was approved an Act of the

General Assembly (Act No. 350, Acts of 1933, p. 489), empowering the Governor, whenever he shall determine, after advising with the State Board of Bank Control, "that any bank for which a Conservator has been or hereafter shall be appointed, is insolvent or in imminent danger of insolvency and it is necessary in order to protect the interest of depositors and creditors to liquidate such bank, he shall order the liquidation thereof; and when liquidation shall have been so ordered the same shall be under and by the conservator appointed for such bank, and shall continue until the liquidation of said bank has been completed. Any such conservator shall be vested with the same powers and duties as receivers of banks under existing laws, except as in his discretion the Governor acting with the Board of Bank Control shall fix or limit the liquidating expenses of such bank or banking institution. The liquidation of all such banks shall be under such rules and regulations as may be prescribed by the Governor after consulting and advising with the Board of Bank Control, and the conservator shall have the right to apply to a Court of competent jurisdiction for direction and instruction on questions arising in the liquidation of any such bank." Section 1.

Section 5 provides that "All Acts or parts of Acts inconsistent with this Act are hereby repealed."

It is argued on behalf of the appellants that this Act, which is still of force and effect, repeals Section 7855 of the 1932 Code, the provisions of which section are entirely different from and inconsistent with the terms of the Act. Section 7855, upheld by Judge Grimball, deals with the duties of the State Bank Examiner, an office now abolished, with reference to the liquidation of closed banks, and provides a method of procedure for the appointment of a Receiver, totally at variance with the present law; provides for the compensation of such Receiver so appointed (whose appointment is based upon the recommendation of depositors and creditors called together for that purpose); and

further provides that the compensation of attorneys employed by such Receiver shall be fixed by the Court, after a published notice to creditors and depositors.

Section 7855 is generally referred to as the old law, because it antedates the emergency banking laws subsequently enacted, and in our opinion this section is superseded by these later Acts, the last one of which was enacted in 1936 (Act 802, Acts 1936, page 1484). An examination of these Acts clearly shows that the legislature undoubtedly intended that the procedure looking toward the closing of insolvent banks and their liquidation was to be under the control and supervision of the Governor, acting with the State Board of Bank Control, and now vested in the State Board of Bank Control alone.

These statutes provide for the appointment of a conservator by the State Board of Bank Control, and further provide (Act approved May 16, 1933), that the liquidating expenses of an insolvent bank shall be fixed or limited by the appointing power, in its or his discretion, and we think attorneys' fees must necessarily be included in "liquidating expenses."

We are of the opinion that the intent and purpose of the law was to give to the State Board of Bank Control exclusive jurisdiction in the first instance in fixing and limiting attorneys' fees, and may not be defeated or subverted by any party in interest by resort to the Courts, unless such board has refused to act, or has acted in such a way as results in an abuse of discretion. In such case the Courts of Common Pleas in this State would in a proper case have the power in the exercise of their equitable jurisdiction to review the action of the board.

Judgment affirmed as modified.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.