2002

King CARMAN, Respondent v. SOUTH CAROLINA ALCOHOLIC BEVERAGE CONTROL COMMISSION, Appellant.

433 S.E. (2d) 885

Court of Appeals

*Frank L. Valenta, Jr.,* of *South Carolina Alcoholic Beverage Control Com'n,* Columbia, *for appellant.*

*Isadore E. Lourie* and *Andrew N. Safran,* both of *Lourie, Curlee, Barrett, Ragsdale & Safran,* Columbia, *for respondent.*

Heard Mar. 16, 1993; Dec. May 3, 1993.

Reh. Den. Aug. 13, 1993.

LITTLEJOHN, Acting Judge:

The South Carolina Alcoholic Beverage Control Commission (the Commission) appeals from an order of the circuit court reversing the Commission's denial of Respondent King Carman's (Carman) applications for a beer and wine permit and a sale and consumption (i.e., minibottle) license. We reverse and reinstate the Commission's order.

In 1975, Carman operated a hotel and lounge in Bennettsville under a license issued by the Commission to sell whiskey in minibottles, and a permit to sell beer and wine. In that year both were revoked because Carman (1) sold alcoholic liquors during restrictive hours, (2) refilled minibottles, and (3) illegally possessed liquor by having alcoholic bever-

ages in containers larger than two ounces. The Commission ordered Carman's beer and wine permit revoked under S.C. Code Ann. § 4-215 (1962), and ordered Carman's sale and consumption license revoked under "Section 10.5 of Act No. 398 of 1967, as amended." These were provisions of the South Carolina Beverage Control Act. The Commission levied a penalty of $2,000 against the sale and consumption license, and a penalty of $1,000 against the retail beer and wine permit for these violations.

A settlement was negotiated by Carman's attorney, Ron Crowe, whereby Carman paid a total fine of only $1,750 and the license and permit were immediately reinstated. Carman asserted that the license and permit were re-issued in the name of Carman's wife, but a document in the record indicates that in fact the Commission issued the license to a Carman employee, Joseph O'Neal.

In April 1982 Carman pled not guilty in Florence County to solicitation to commit murder. After a mistrial he pled *nolo contendere* and was sentenced to five years which was suspended to five years probation and a $3,000 fine. The court terminated the sentence in March 1985 upon Carman's successful completion of the terms of probation.

In late 1986 Carman applied to the Commission for both a beer and wine permit and a minibottle license for a restaurant and lounge located in Bennettsville. Upon investigation the Commission noted in its file that Carman had a criminal record and had a prior permit and license revoked. The premises were licensed at the time in O'Neal's name.

The director of licensing denied the applications. The Commission, however, on March 17, 1987, approved the license and permit as indicated by letter of the Commission to attorney Kenneth E. Allen reading as follows: "After a hearing held on March 17, 1987, the Commission has approved your client's above-referenced application." The chief deputy of enforcement testified that he was unaware that any hearing was actually held. The Commission at that time was composed of Commissioners Thompson, Scott and Murray—none of whom were serving in 1989.

In November 1989 Carman again applied for a beer and wine permit and a minibottle license for an establishment in Darlington known as "The Gold Rush Bar and Grill." These

applications were denied by the director of licensing. A hearing was held before the Commission then composed of Commissioners Hearn, Hodge and Crick.

The Commission by Order dated March 30, 1990, denied Carman's application on the basis that he was not of suitable moral character to hold a permit or license and that the Commission lacked the authority to issue a license as Carman was ineligible for licensure. The grounds for this determination were Carman's 1982 criminal record and the 1975 revocations which the Commission interpreted as being permanent.

Carman appealed the Commission's ruling to the circuit court. The circuit court found that the doctrine of collateral estoppel barred the Commission from considering Carman's moral character and eligibility in 1990 since the Commission as formerly constituted had approved his license and permit in 1987. The order further found that Carman's prior revocation of licensure was not the result of the avoidance of taxes as found by the Commission and, therefore, the revocations were not permanent. It further reasoned that even if collateral estoppel did not operate to bar the Commission, it was barred by equitable estoppel as the 1987 Commission (as then composed) had acted within its authority. It is from this reversal the Commission now appeals to this court.

We briefly review the history of the South Carolina Alcoholic Beverage Control Act as a backdrop to an understanding of the posture of the case as it is before us. In 1962, S.C. Code Ann. § 4-215 (1962) provided, in part:

> No holder of a permit authorizing the sale of beer or wine or any servant, agent or employee of the permittee shall knowingly do any of the following acts upon the licensed premises:
>
> &ast; &ast; &ast;
>
> (5) Permit any act, the commission of which . . . constitutes a crime under the laws of this State; or
> (6) Sell, offer for sale or possess any beverage or alcoholic liquor the sale or possession of which is prohibited on the licensed premises under the laws of this State.
>
> A violation of any of the foregoing provisions shall be a ground for the revocation or suspension of such holder's permit.

In 1967, the Legislature passed Act No. 398, 1967 S.C. Acts 571. Section 10 governed possession of alcoholic liquors and required a license for consumption on a premises. Subsection D(1) governed applications for possession or consumption permits, and set out the criteria for obtaining a permit. Subsection D(2) provided, in part, that the Commission could suspend, revoke or refuse to renew a permit upon finding:

> (a) the applicant no longer meets the requirements of (1) above, or
> (b) the applicant has violated since the issuance of the license any of the regulations promulgated by the Commission, or
> (c) The applicant has violated since the issuance of the license any other provisions of the Alcoholic Beverages Control Act, as amended.

In 1972, the Legislature enacted Act No. 1063, 1972 S.C. Acts 2213, which amended 1967 Act No. 398. Section 10 was struck from the 1967 act, and a new section 10 was inserted. The new statute provided, in part:

> Section 10.5. The Commission may suspended, revoke or refuse to renew a license upon finding that:
> (a) The applicant no longer meets the requirements of Section 10.3, or
> (b) The applicant has violated since the issuance of the license any of the regulations promulgated by the Commission, or
> (c) The applicant has violated since the issuance of the license any other provisions of the Alcoholic Beverages Control Act, as amended.

This section clearly replaced Section 10(D)(2) of the 1967 act. Interestingly, Section 10.5 did not provide for penalties or fines to be levied by the Commission. The 1972 Act, however, did provide further as follows:

> Section 10.10. Any person who transports, possesses or consumes alcoholic liquors except in a manner permitted by this act and any person who violates any of the provisions thereof shall be guilty of a misdemeanor and, upon conviction, shall be fined not more than one hundred dol-

lars or be imprisoned for not more than thirty days. In addition any person who is licensed to sell alcoholic liquors pursuant to the provisions of this act who has in his possession on his licensed premises any alcoholic beverages in excess of 50 proof in containers other than sealed containers of two ounces or less or who displays such sealed containers when the seals are broken or who violates any other provision of this act shall:

\* \* \*

(4) For any violation involving the avoidance of taxes, a fine of not less than one thousand dollars and permanent revocation of his license (sic).

This section is now found in S.C. Code Ann. § 61-5-110 (1990).

We also note that the 1972 act contained Section 10.6, which provided in part:

When a license is suspended or revoked, no partner or person with a financial interest of any kind in the premises, nor any person within the third degree of kinship to the person to whom a license had been issued, shall be granted a license for the premises concerned.

Any person whose license has been suspended or revoked for a particular premises shall not be eligible for a license at any other location during the period such suspension or revocation is in effect.

Thus, it would have been illegal in 1975 for the Commission to reissue a license to Carman's wife, as he claimed at the 1990 hearing. This statutory provision is now codified at S.C. Code Ann. § 61-1-95 (1990).

This was the state of the law in February 1975, when the Commission revoked Carman's license for the Bennettsville Motel for sale of alcoholic liquors during restrictive hours, refilling minibottles and illegally possessing legal liquor in containers larger than two ounces.

We hold that the 1975 revocation was pursuant to 1972 Act No. 1063, Section 10.10(4), not Section 10.5. Although the Commission wrote to Carman on February 11, 1975, that it found a violation of "Section 10.5 of Act No. 398 of 1967," the letter further stated the following reasons for the revocation:

refilling minibottles and illegal possession of legal liquor in containers larger than two ounces. These activities expressly violated Section 10.10 as well as Section 10.5. We find, however, the reference to Section 10.5 was clearly a scrivener's error, particularly since Section 10.5 was part of the 1972 act, not the 1967 act.

We find additional support that the revocation was pursuant to Section 10.10 in the fact that the Commission levied a $3,000 fine against Carman in 1975. The Commission had no authority to do so under Section 10.5, but was required to fine Carman under Section 10.10(4). We further find that the amounts of the fines ($1,000 and $2,000) support the 1990 Commission's conclusion that the 1975 revocation was pursuant to subsection (4) of Section 10.10 (requiring a fine of not less than $1,000 for each violation). Finally, Carman agreed to pay a compromised fine of $1,750; we find it incredible to think he would have done so under a provision which did not authorize any fine by the Commission.

We next hold that the Commission was without authority in 1987 to issue Carman the license for the Bennettsville premises. The 1975 revocation was, by reason of the Code sections quoted hereinabove, permanent. Those sections did not require a revocation to be based upon a specific finding of tax avoidance. It need only be a violation "involving the avoidance of taxes."

Minibottles are taxed at a substantially higher rate than other containers of whiskey. *See* S.C. Code Ann. § 12-33-410, *et seq.*, (1976 and Supp. 1992); S.C. Code Ann. § 61-5-130 (1990). One refilling a minibottle from a larger container has avoided the taxes that would have been collected had he purchased and sold filled minibottles. One need not be bit by Solomon's dog to conclude that bartenders take whiskey out of large bottles and refill minibottles for the purpose of avoiding taxes due the state and increasing the profits realized by the owner of the premises. Consequently, if one of Carman's 1975 violations was for refilling minibottles, the revocation involved avoidance of taxes. We find this to be the conclusion of the Commission in 1975, and the reason the Commission fined Carman and revoked his license. Accordingly, under the statutes, the 1975 revocation was permanent, as the 1990 Commission correctly found.

At the 1989 hearing it was the contention of attorney Ken Allen that evidence relative to the character of Carman prior to 1987 was irrelevant and should not be considered by the Commission. The Commission overruled this contention.

In reversing the Commission, the circuit court based its order primarily on the ground that the Commission was collaterally estopped from relitigating the issue of moral character and eligibility in view of the fact that these questions had inferentially been resolved in favor of Carman by the Commission in March of 1987, when it issued to him a similar license and a similar permit for another location. We disagree.

Collateral estoppel acts as a bar to relitigation of the same facts or issues necessarily determined in a former proceeding. *Liberty Mut. Ins. Co. v. Employers Ins. of Wausau*, 284 S.C. 234, 325 S.E. (2d) 566 (Ct. App. 1985). However, estoppel does not extend to matters not expressly adjudicated, and which can be inferred only by argument, except where they are necessary and inevitable inferences. *Dunlap & Dunlap v. Zimmerman*, 188 S.C. 322, 199 S.E. 296 (1938); 50 C.J.S. *Judgments* § 717 (1947).

It is not argued that Carman is of good moral character as required of applicants by the Alcoholic Beverage Control Act. Certainly the record supports the inference that he is not. The contention is based on the proposition that a former commission so found. Inasmuch as the 1987 Commission granted the permit and license at a time when the revocations were permanent, however, it acted without authority. As relates to the hearing in 1987 resulting in licenses being granted to Carman, there is no transcript of record of that hearing or written order detailing the findings of the Commission. It is, therefore, impossible to determine what issues were actually litigated. Inferentially, Carman argues, the Commission, as then composed, determined that Carman was of good moral character and eligible for licensure.

We do not find the law of *res judicata,* collateral estoppel, or equitable estoppel applicable under the facts of this case, however. The law of estoppel and/or equitable estoppel is often applicable where the rights of individuals and corporations are concerned. Such is less often applicable where governmental rights of the people are involved. Carman has not

been misled or sacrificed any rights because the Commission rightfully or wrongfully approved his application in 1987.

Carman would take comfort in the ruling of the Court of Appeals in *St. Philip's Episcopal Church v. South Carolina ABC Comm'n*, 285 S.C. 335, 329 S.E. (2d) 454 (Ct. App. 1985). In that case the Commission granted a liquor license for a business concern at a location near the church. The church opposed but did not prevail. Later another applicant sought a liquor license for the same location. The Court of Appeals held that the church was equitably estopped to relitigate. In that case there was not involved the question of whether a governmental administrative agency could exercise its police powers. In effect the Court held that litigants could not continue to harass each other.

The case cited by counsel for the Commission is more applicable. In *Heyward v. South Carolina Tax Comm'n*, 240 S.C. 347, 351, 126 S.E. (2d) 15, 17 (1962), the Supreme Court of South Carolina recognized that the doctrine of estoppel may be applied in contractual matters, but further that Court said:

> However, the doctrine of estoppel will not be applied to deprive the government of the due exercise of its police power, or to effect (sic) public revenues or property rights, or to frustrate the purpose of its laws or thwart its public policy. *Powell v. Board of Commissioners of Police Insurance & Annuity Fund*, 210 S.C. 136, 41 S.E. (2d) 780, 1 A.L.R. (2d) 330 [(1947)].

*See also Town of Sullivan's Island v. Byrum*, 306 S.C. 539, 413 S.E. (2d) 325 (Ct. App. 1992) (as a general rule, estoppel does not lie against the government to prevent the due exercise of its police power or to thwart the application of public policy).

The law of collateral estoppel and/or equitable estoppel will be applied with great reluctance where a governmental entity in its exercise of police powers is involved. To tell a litigant that he may not harass another litigant when a matter has been determined is greatly different from telling a governmental agency it may not exercise its police powers. The Commission, as composed in 1990, had not only the duty but the right under the facts of this case to deny Carman a permit and license.

Finally, we find further support for our ruling that the revocation was permanent under § 4-78 of the 1962 S.C. Code of Laws, now codified at S.C. Code Ann. § 61-3-990 (1990), which as of the date of revocation read, in part, as follows:

> It shall be unlawful for any person licensed to sell alcoholic beverages under the provisions of this section to refill a container of two ounces or less and any person who is convicted of doing so shall have his license revoked permanently.

Although this section applies only to "red dot" retail dealers, it evidences a legislative intent that one found guilty of refilling minibottles will suffer a permanent revocation of licenses and permits.

The order of the circuit court is accordingly

Reversed.

CURETON and GOOLSBY, JJ., concur.