24165

King CARMAN, Petitioner v. SOUTH CAROLINA ALCOHOLIC
BEVERAGE CONTROL COMMISSION, Respondent.

(451 S.E. (2d) 383)

Supreme Court

*Isadore E. Lourie* and *Andrew N. Safran, Lourie, Curlee, Barrett and Safran,* Columbia, *for petitioner.*

*Ray N. Stevens, Chief Deputy Atty. Gen., Ronald W. Urban, Deputy Atty. Gen.,* and *Arlene D. Hand, Asst. Atty. Gen., Dept. of Revenue,* Columbia, *for respondent.*

Heard Oct. 19, 1994.

Decided Nov. 28, 1994.

TOAL, Justice:

We granted certiorari to review the opinion of the Court of Appeals in *Carman v. South Carolina Alcoholic Beverage Control Commission,* — S.C. —, 433 S.E. (2d) 885 (Ct. App. 1993). We reverse.

## FACTS

In 1975, Carman received a letter notifying him of the revocation of his sale and consumption liquor license and beer and wine permit. The letter charged Carman with selling alcohol during restricted hours, refilling of minibottles, and having alcoholic liquor in containers larger than two ounces. The letter proposed the following sanctions: (1) revocation of Carman's sale and consumption license; (2) a $2,000 fine and; (3) revocation of Carman's beer and wine license or, in lieu thereof, an additional fine of $1,000. Carman's attorney requested an informal meeting with the Commission. A settlement was negotiated in which Carman agreed to a revocation of both his license and permit and a fine of $1,750.

In late 1986, Carman applied for a new beer and wine per-

mit and sale and consumption license. The Commission's investigation revealed the 1975 revocations and a 1982 *nolo contendere* plea to solicitation of murder.[1] Initially, Carman's application was denied. However, in 1987, a hearing was subsequently requested and held. After the hearing, the Commission granted, by unanimous vote, the sale and consumption license and beer and wine permit.

In 1989, Carman applied for a beer and wine permit and a sale and consumption license for another location. This application was initially denied due to Carman's conviction of solicitation of murder. After a hearing in March 1990, the Commission denied the application based on its conclusion that (1) Carman was not of "good moral character" within the meaning of S.C. Code Ann. § 61-5-50 and § 61-9-320 (1990); and (2) his prior revocations were for the avoidance of minibottle taxes required by section 61-5-110(4) and, consequently, permanent.

Carman appealed this decision to the circuit court. The trial judge found no evidence that Carman's prior revocations were permanent. Also, the trial judge held the Commission was collaterally estopped from relitigating Carman's moral character for matters that were before the Commission when it issued the 1987 license. Accordingly, the trial judge reversed the Commission's determination and instructed the Commission to issue Carman the license.

The Commission appealed. The Court of Appeals reversed the trial judge's order holding Carman's prior revocations were permanent and, therefore, the Commission was without authority in 1987 to issue Carman a license. *Carman v. South Carolina Alcoholic Beverage Control Comm'n,* — S.C. —, 433 S.E. (2d) 885 (Ct. App. 1993). Additionally, the Court of Appeals held the Commission was not collaterally estopped from relitigating Carman's moral character for matters that were before the Commission when it issued the 1987 license. *Id.* We granted Carman's petition for writ of certiorari to review the Court of Appeal's opinion.

---

[1] Carman was sentenced to five years imprisonment, suspended upon service of five years probation and payment of a $3,000 fine. The probation was terminated in 1985.

## LAW/ANALYSIS

Carman contends the Court of Appeals erred in finding the Commission was without authority to issue the 1987 license because the prior revocation of his license was permanent. We agree.

In its letter revoking Carman's license, the Commission found Carman violated "the provisions of Section 10.5 of Act. No. 398 of 1967,[2] as amended"[3] by selling of alcoholic liquors during restricted hours, refilling minibottles, and illegally possessing legal liquor by having alcoholic liquors in containers larger than two (2) ounces. The letter further ordered that the license be surrendered as provided in Section 10.6 of Act. No. 398 of 1967, as amended.[4] Additionally, in its letter revoking Carman's permit, the Commission found Carman violated "the provisions of Title 4-215, Chapter 2 of the 1962 Code of Laws of South Carolina"[5] and ordered the permit to be surrendered as provided for in "Section 4-218, Chapter 2, of the 1962 Code of Laws of South Carolina."[6]

The Court of Appeals found the activities expressed in the

---

[2] In 1972, the 1967 act was amended by act number 1063. The sections cited by the Commission in its letter correspond to this amendment.

[3] 1972 Act No. 1063, Section 10.6 provides in part:

The Commission may suspend, revoke or refuse to renew a license upon finding that: . . . .

(b) The applicant has violated since the issuance of the license any of the regulations promulgated by the Commission, or

(c) The applicant has violated since the issuance of the license any other provisions of the Alcoholic Beverage Control Act, as amended.

[4] 1972 Act No. 1063, Section 10.6 provides in part:

Any person whose license has been suspended or revoked for a particular premises shall not be eligible for a license at any other location *during the period such suspension or revocation is in effect.* [Emphasis added.]

[5] S.C. Code Ann. § 4-215 (1962) provides in part:

No holder of a permit authorizing the sale of beer or wine or any servant, agent or employee of the permittee shall knowingly do any of the following acts upon the licensed premises covered by such holder's permit . . .

(6) Sell, offer for sale or possess any beverage or alcoholic liquor the sale or possession of which is prohibited on the licensed premises under the law of this State.

A violation of any of the foregoing provisions shall be a ground for the revocation or suspension of such holder's permit.

[6] S.C. Code Ann. § 4-218 (1962) provides:

Upon the revocation, cancellation or suspension of a license or permit to sell beer or wine, at wholesale or retail, the licensee shall immediately surrender his license to the Tax Commission.

letter violated section 10.10[7] as well as section 10.5. *Carman* at —, 433 S.E. (2d) at 888. Therefore, the court held the reference to section 10.5 was "clearly a scrivener's error" and Carman's license was revoked under section 10.10. Additionally, the court held Carman's license was revoked pursuant to section 10.10 because the Commission had no authority to impose a fine of $1,750 under section 10.5 and, therefore, found it "incredible to think" Carman would have agreed to the compromised fine under a provision which did not authorize any fine by the Commission. Moreover, the court held that because the license was revoked for the refilling of minibottles, the revocation involved the avoidance of taxes under section 10.10. The court concluded that a revocation for avoidance of taxes is permanent under section 10.10 and, therefore, Carman's revocation was permanent. *Id.*

The letter of revocation clearly stated the license was revoked under section 10.5. Section 10.5 specifically provides that the Commission may revoke a license upon finding that since the issuance of the license the applicant has violated any of the regulations promulgated by the Commission. The letter also stated the license be surrendered as provided in section 10.6 which specifically contemplates temporary revocations. There is no evidence the Commission charged Carman with violations of any subsection of section 10.10 including the avoidance of taxes. Accordingly, there is no evidence of a "scrivener's error." Moreover, the Commission had the authority to levy fines in lieu of suspension or revocation under S.C. Code Ann. § 4-108.4 (1962). Therefore, section 10.10 was not the only statute granting the Commission authority to impose fines. The evidence supports the trial judge's finding the revocation of Carman's license in 1975 was pursuant to section 10.5

---

[7] 1972 Act No. 1063, Section 10.10 provides in part:

[A]ny person who is licensed to sell alcoholic liquors pursuant to the provisions of this act who has in his possession on his licensed premises any alcoholic beverages in excess of 50 proof in containers other than sealed containers of two ounces or less or who displays such sealed containers when the sealers are broken or who violates any other provisions of this act shall:

(1) For a first offense be fined not less than two hundred dollars nor more than five hundred dollars and have his license suspended for not less than fifteen days nor more than thirty days . . .

(4) For any violation involving the avoidance of taxes, a fine of not less than one thousand dollars and permanent revocation of his license.

and, therefore, not permanent. Because the license was not revoked permanently, the Commission had authority in 1987 to issue a license.

Carman next argues that the Court of Appeals erred in holding the Commission was not colaterally estopped from relitigating issues of Carman's moral character and eligibility decided by the Commission in 1987. We agree.

■ When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, courts have not hesitated to apply *collateral estoppel* to enforce repose. *See United States v. Utah Constr. and Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed. (2d) 642 (1966). Under the doctrine of collateral estoppel, when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *South Carolina Property and Casualty Ins. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 304 S.C. 210, 403 S.E. (2d) 625 (1991). "The estoppel of a judgment does not extend to matters not expressly adjudicated, and which can be inferred only by argument or construction from the judgment, except where they are necessary and inevitable inferences in the sense that the judgment could not have been rendered as it was without deciding such points." *Dunlap & Dunlap v. Zimmerman*, 188 S.C. 322, 199 S.E. 296 (1938).

■ Here, there is no record of the 1987 hearing. The evidence shows, however, the Commission's file included Carman's criminal conviction for solicitation of murder. Under S.C. Code Ann. § 61-5-50(b) (Supp. 1988), the Commission may only grant a license upon a finding that the applicant is of good moral character. Therefore, the Commission could not have issued Carman a license in 1987 without finding him to be of good moral character. *See Whitmire v. Cass*, 213 S.C. 230, 49 S.E. (2d) 1 (1948) (in the absence of any proof to the contrary, there is a presumption that public officers have properly discharged the duties of their office and have faithfully performed those duties with which they are charged). Accordingly, we find that in 1990, the Commission was collaterally estopped from relitigating the issue of Carman's moral

character based on his 1982 plea of *nolo contendere* to solicitation to commit murder because this issue was necessarily determined for the issuance of the 1987 license. *See Lamplighter Lounge, Inc. v. State,* 510 N.W. (2d) 585 (N.D. 1994) (administrative *res judicata* prevented Attorney General from denying renewal of liquor license for same reason it had previously been found inadequate to warrant license revocation); *Polsky v. Atkins,* 197 Tenn. 201, 270 S.W. (2d) 497 (1954) ("since all the evidence offered or attempted to be offered which is sought to prevent this party from obtaining a license was before the powers that be at the time another license was granted cannot now be offered and prevent this party from being issued a license").

For the reasons set forth herein, the Court of Appeals is REVERSED.

CHANDLER, C.J., and FINNEY, MOORE and WALLER, JJ., concur.