723 S.E.2d 822

Charles E. GORDON and Barbara Gordon, as
Personal Representatives of the Estate of
Clara Gordon Burch, Appellants,

v.

Jacqueline F. BUSBEE, individually and as Personal Representative of the Estate of George E. Burch; Dennis E. Burch; and Laurie E. Burch, Respondents.

In the Matter of The Estate of Clara Gordon Burch.

No. 4880.

Court of Appeals of South Carolina.

Heard March 8, 2011.

Decided Aug. 31, 2011.

Withdrawn, Substituted and Refiled Jan. 4, 2012.

120

122

⚷30

Adele J. Pope, of Columbia, and Thomas H. Pope, of Newberry, for Appellants.

B. Michael Brackett, of Columbia, for Respondent Jacqueline F. Busbee, as Personal Representative of the Estate of George E. Burch; Warren C. Powell, Jr., and William D.

Britt, Jr., of Columbia, for Respondent Jacqueline F. Busbee, individually; and Carlos W. Gibbons, Jr., of Columbia, for Respondents, Dennis E. Burch and Laurie E. Burch.

KONDUROS, J.

Charles and Barbara Gordon appeal the circuit court's denial of their motions for directed verdict and the grant of directed verdict to the defendants on various causes of action. They further appeal various matters related to jury instructions as well as the circuit court's refusal to grant equitable relief. We affirm in part, reverse in part and remand.

## FACTS

Clara Gordon Burch and her fourth husband, George E. Burch, were married in 1984. Clara was 75 at the time of their marriage and George was almost 70. Clara had no children, while George had two, Dennis E. Burch and Laurie E. Burch. Clara's will, executed in 1985, left a life estate in her home to George, but ceded her remaining assets to her Gordon family members, including her nephew, Charles, and other nieces and nephews. In October 1994, Clara entered a nursing home and was experiencing "cognitive defects." She had amassed a sizable estate composed primarily of bonds, certificates of deposit, and other funds received incident to her previous marriages. In February of 1995, Clara executed a power of attorney (POA) in George's favor. The POA did not contain a gifting provision. George's attorney, Jacqueline Busbee, prepared the POA, although she did not meet or confer with Clara before doing so. Thereafter, George removed funds in CDs or accounts owned by Clara or from their joint account totaling approximately $400,000. Clara passed away in April of 2000, and, per the provisions in her will, George was named personal representative (PR) of her estate. Busbee began advising George in his capacity as PR. George died on January 18, 2003, and, per the provisions of his will, Busbee was named PR of his estate. Charles was appointed successor PR of Clara's estate on February 27, 2003. Charles filed this lawsuit in April 2005.[1]

---

1. The matter was dismissed on a procedural ground but remanded for trial on appeal. *Gordon v. Busbee*, 367 S.C. 116, 623 S.E.2d 857 (Ct.App.2005).

At trial before the circuit court, Charles's wife, Barbara, and George's daughter, Laurie, testified George mentioned an arrangement between Clara and him to handle their estate finances. Laurie also testified George gave her a loan in the amount of $170,000 that was to be considered an advance against her inheritance if it was not repaid at the time of his death.

The Gordons presented expert accounting evidence through Agnes Asman, a certified public accountant. She testified she had examined all the records available to her and created a chart that represented transfers made from Clara's funds into accounts or CDs held solely in George's name or in their joint account that had been used to pay for Clara's nursing home care. In her estimation, George had misappropriated approximately $450,000 exclusive of interest. On cross-examination, Asman conceded the examination she had conducted was not a forensic accounting that would demonstrate the source of the funds into the accounts and specifically trace the funds to their final destination. She further admitted she had not examined the signature cards for the various accounts but had relied on the Internal Revenue Service form 1099s to determine who had ownership of various accounts and assets. In at least one instance when Asman's chart showed ownership of an account by Clara, George was also a signator on the account. Additionally, Asman testified she had not considered George's contribution to the parties' joint bank account when determining that he had withdrawn money that belonged to Clara.

With respect to Busbee, the Gordons alleged she had operated as George's attorney in his capacity as PR and as attorney for Clara's estate. They claimed Busbee failed to check the status of Clara's estate at the time of her death by failing to inventory Clara's safety deposit box and by neglecting to obtain Clara's last bank statements prior to the death. They also argued Busbee's filing of the inventory of assets in Clara's and George's estates was inaccurate and/or fraudulent. They contended Dennis and Laurie knew of George's transfer of funds from Clara's accounts and estate and received the benefit of those transfers either directly or as his devisees.

At the close of the Gordons' case, the circuit court granted Dennis Burch's directed verdict motion as to all claims against

him. With respect to Laurie, the court granted a directed verdict in her favor as to all claims with the caveat that she may be called upon to repay the loans from George to his estate. The circuit court granted a directed verdict in favor of Busbee on all claims against her individually with the exception of the causes of action for legal malpractice and breach of fiduciary duty. It also allowed the conversion claim against her as PR of the estate to remain but only insofar as she was the representative of George's estate in the action, not based on her actions in converting any assets.

At the close of all evidence, the Gordons moved for directed verdict against George's estate, arguing the money transferred by George should be returned to Clara's estate because he had transferred the funds without Clara's permission. That motion was denied, apparently based on the argument that George and Clara had made an oral contractual arrangement for the execution of these transfers.

After closing arguments, court was dismissed for the day. The following morning, the Gordons submitted additional jury charge requests relating to the proportional ownership of joint bank accounts with right of survivorship and other matters. The circuit court refused the charges, determining the request was untimely pursuant to Rule 51, SCRCP. After the jury was charged, the Gordons took exception to the charge on conversion. They argued the circuit court had placed the burden of persuasion on the plaintiff when the burden should have been shifted to the defendant to prove the transfers were valid in the absence of authorization to make them. The circuit court stood by its original charge.

The jury found in favor of Busbee and George's estate on the remaining causes of action. The Gordons then sought equitable relief from the circuit court including (1) the removal of Busbee as PR of George's estate; (2) a declaration that the bank accounts and loan to Laurie were receivable assets of Clara's estate; (3) the appointment of a special administrator to account to Clara's estate; and (4) the imposition of a constructive trust on all liquid assets of George's estate to the extent of the transfers with interest. The circuit court denied this motion and all post-trial motions. This appeal followed.

## LAW/ANALYSIS

### I. Denial of Directed Verdict (George's Estate)

■ The Gordons contend the circuit court erred in failing to direct a verdict in their favor concerning the transfers George made after Clara's undisputed incompetence in the summer of 1995. We agree in part.[2]

■ In reviewing the denial of a directed verdict motion, this court employs the same standard as the trial court—we view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Welch v. Epstein*, 342 S.C. 279, 299–300, 536 S.E.2d 408, 418 (Ct.App.2000).

At the close of evidence, the Gordons moved for a directed verdict "as to all transfers of the assets of Clara Burch by George Burch from and after June 30 of [1995]." On appeal, George's estate argues this motion was not sufficiently specific as required by Rule 50(a), SCRCP, which states "[a] motion for a directed verdict shall state the specific grounds therefor." We disagree.

■ The Gordons relied upon *Fender v. Fender*, 285 S.C. 260, 329 S.E.2d 430 (1985), in making their motion. In *Fender*, the attorney in fact for the decedent transferred to himself 37.4 acres of land, a car, and the proceeds of two bank accounts prior to the decedent's death. *Id.* at 262, 329 S.E.2d at 431. The POA did not contain a gift-giving provision and the South Carolina Supreme Court adopted a bright-line rule in this area. *Id.* "[I]n order to avoid fraud and abuse, *we adopt a rule barring a gift by an attorney in fact to himself or a third party absent clear intent to the contrary evidenced in writing.*" *Id.* (emphasis added). *Fender's* mandate is de-

---

2. Respondents argue because the Gordons painted George as a "crook" and the jury did not agree with that proposition, the Gordons cannot now claim any error in the jury's verdict under the invited error doctrine. This is a misapplication of the doctrine. An appellant cannot cause or invite the trial court to err and then complain about the court's actions on appeal. *See* 5 C.J.S. Appeal and Error § 872 ("One may not complain on review of errors below for which he or she is responsible, or which he or she has invited or induced the trial court to commit."). That is not the case presented here. In this case, the Gordons simply took a trial strategy that did not convince the jury. That does not touch upon an error by the court and is without the bounds of the invited error doctrine.

signed to protect the vulnerable from improper conduct by those in whom they place the greatest trust. Accordingly, the Gordons' directed verdict motion to disallow the transfers under *Fender* was sufficiently specific to operate as a directed verdict motion for breach of fiduciary duty.

■ In this case, no one disputes Clara's POA did not contain a gift-giving provision and the record contains no written evidence of her authorization for George to make the transfers he did. The circuit court based its decision on the existence of evidence, however slight, showing an arrangement between Clara and George to allow him to make transfers to avoid estate taxes. However, under *Fender*, the existence of such an oral agreement is insufficient to authorize the transfers. Any transactions involving George taking funds that were undisputedly Clara's and transferring them into a fund solely owned by him would fit within the construct of *Fender*. Therefore, the circuit court erred in failing to grant the Gordons' directed verdict motion as to those transactions.

The transactions made during April 2000 and listed in the record as Plaintiff's Exhibit 6, with the exception of the $70,000 withdrawal made from George and Clara's joint account, fall within this category. With respect to these transactions all evidence indicates George took funds belonging solely to Clara and opened CDs for those amounts exclusively in his name. Likewise, the evidence demonstrates George closed a Wachovia CD belonging to Clara in his capacity as PR and opened a CD in his name the same day in the same amount.[3] Even if these transfers were made in furtherance of some oral agreement between George and Clara, they are exactly the types of transactions prohibited by *Fender* as a matter of law.[4] Our supreme court has drawn a bright line in

---

3. With respect to the Wachovia CD, Jeremy Hall, a financial specialist with Wachovia, testified there was a denotation in the bank's system indicating the CD might be connected to an individual retirement account (IRA). If it was connected, the surviving spouse would be the beneficiary of the CD upon the decedent's death unless another beneficiary was named. Hall was recalled later in the trial and testified that after checking additional records from Wachovia's main office, the CD was not connected to an IRA.

4. When asked a hypothetical at trial, Steve Johnson, a defense expert, opined if the transfers were made pursuant to a contract between Clara

such situations so as to avoid the defrauding of vulnerable adults by fiduciaries.

Because the evidence relating to each transaction in this case is not identical, the transactions should be considered individually. Some of the transactions involve facts that arguably bring them outside the clear scope of *Fender*. For example, one transaction at issue involved George closing a CD and depositing the funds into the joint account that was used to pay for Clara's care while in the nursing home. Another transaction involved the removal of $70,000 from the joint account and conversion into a $50,000 CD for George and a $20,000 deposit into his own bank account.[5] Yet another transaction involved the removal of funds from a joint account, although it is disputed when the account was made joint. In each of these instances, George at least arguably had an initial claim to the funds as proceeds in a joint account or he put Clara's funds into a joint account that paid for her care, an act that would arguably be for her benefit. With respect to some of the transactions, how the funds were expended is unclear. In those cases, determining whether George had breached a fiduciary duty was within the jury's province.

In sum, *Fender* mandated a grant of directed verdict on transactions in which the evidenced demonstrated Clara's solely-owned assets were transferred by George for his sole benefit. Therefore, the following funds taken from Clara's estate pursuant to the transactions listed on Plaintiffs Exhibit 6 should be returned to the plaintiffs: (1) $79,495.11 and $4,778.46 withdrawn from two of Clara's accounts at Security Federal on April 13, 2000; (2) $20,026.41 received upon the closing of one of Clara's accounts at Security Federal on April

---

and George, George could have made the transfers under the POA's authority to execute and carry out contracts on Clara's behalf. However, the purpose of the contractual power is to benefit Clara. Here, even if the arrangement was her desire, the transfers benefited George, not her, and such an interpretation would effectively eliminate the prohibition expressly stated in *Fender*.

5. We recognize Asman testified the funds contributed to the joint account were primarily Clara's and that would render the joint account funds her property until the time of her death as discussed in Section III.A. However, the cross-examination of Asman revealed enough uncertainty in her testimony to make the question of ownership of the joint account funds a jury issue.

17, 2000; (3) $39,552.98, $6,235.99, and $9,904.21 withdrawn from three of Clara's accounts at Community Bank [6] on April 17, 2000. Additionally, $33,309.87, received by George upon the closing of Wachovia CD Account # 117232 in September of 2000, constitutes an improper transfer. We remand this matter to the circuit court for a determination of whether and in what amount interest will be due to the plaintiffs on these sums. The issue of the propriety of the remaining transactions was properly submitted to the jury because they involved questions of disputed fact.

## II. Grant of Directed Verdict

### A. Aiding and Abetting a Breach of Fiduciary Duty (Busbee—Individually and as PR)

The Gordons contend Busbee knew or should have known of George's activities and she was therefore guilty of aiding and abetting his conduct. We disagree.

When deciding a motion for a directed verdict, the trial court "must view the evidence and all reasonable inferences in the light most favorable to the non-moving party." *Anderson v. Augusta Chronicle,* 355 S.C. 461, 470, 585 S.E.2d 506, 511 (Ct.App.2003). "If the evidence presented yields only one inference such that the trial court may decide the issue as a matter of law, the decision to grant the motion is proper." *Id.*

"The elements for a cause of action of aiding and abetting a breach of fiduciary duty are: (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages." *Vortex Sports & Entm't, Inc. v. Ware,* 378 S.C. 197, 204, 662 S.E.2d 444, 448 (2008). "The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." *Future Group, II v. Nationsbank,* 324 S.C. 89, 99, 478 S.E.2d 45, 50 (1996).

The Gordons presented no evidence Busbee had actual knowledge of the transfers George made prior to his making them or at the time he made them. George acted as attorney-in-fact for Clara prior to her death and as PR for her estate

---

6. According to the record Community Bank is now Capital Bank.

until his own death in 2003. Busbee testified George wanted to handle his responsibilities as PR on his own as much as possible and she "took him at his word." Even if Busbee should have conducted additional investigation into the assets of Clara's estate, that does not constitute evidence of actual knowledge of improper activity on George's part. Therefore, the circuit court did not err in granting a directed verdict in Busbee's favor.

### B. Fraud/Fraud Benefit under Section 62–1– 106 (Busbee—Individually and as PR; Dennis and Laurie Burch)

The Gordons contend the circuit court erred in granting a directed verdict in Busbee's favor, individually and as PR, and in favor of Dennis and Laurie Burch as to this cause of action. We disagree.

Section 62–1–106 of the South Carolina Code (2009) provides:

Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this Code or if fraud is used to avoid or circumvent the provisions or purposes of this Code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefiting from the fraud, whether innocent or not, but only to the extent of any benefit received. Any proceeding must be commenced within two years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate.

Here, the circuit court determined no evidence was presented that Dennis had committed any sort of fraud in connection with this matter and he had yet to receive any of the funds transferred from Clara's estate to George's estate. Therefore, he had not committed fraud or benefited from any other party's fraud. We agree with the circuit court. Evidence showed the only participation Dennis had was evaluat-

ing the contents of George's safety deposit box after his death, and a bank employee testified the examination was conducted properly.

With respect to Laurie, the record contains no evidence that she herself committed fraud. Although she received a benefit from George's conduct in the form of the loan from her father, the circuit court indicated those funds might be owed to Clara's estate pending the resolution by the jury of the remaining claims against George's estate. Therefore, we find the circuit court did not err in granting directed verdict on this claim.

As to Busbee, individually and as PR, she did not benefit from the alleged fraud. Therefore, the only question is whether she perpetrated fraud by filing the inventory of assets of George's estate that listed the transfers as part of his estate. The record contains no evidence Busbee knew any representations she made in those filings were false at the time they were made. Consequently, the circuit court did not err in granting a directed verdict in Busbee's favor.

### C. Conversion (Busbee—Individually and as PR)

The Gordons argue Busbee continued George's conversion of Clara's assets by including them in George's estate's inventory of assets. We disagree.

"Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the exclusion of the owner's rights.'" *Bank of New York v. Sumter Cnty.*, 387 S.C. 147, 158, 691 S.E.2d 473, 479 (2010) (quoting *Moore v. Weinberg*, 383 S.C. 583, 589, 681 S.E.2d 875, 878 (2009)). "Conversion may arise by some illegal use or misuse, or by illegal detention of another's personal property." *Regions Bank v. Schmauch*, 354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct.App.2003).

Nothing in the record demonstrates Busbee assumed the control of any funds without authorization. At the time she became PR, the assets were in accounts held by George and she properly exercised control over them as the PR of his estate. The individual claim of conversion fails because she exercised no control over the assets in her individual capacity.

Therefore, we affirm the circuit court's grant of directed verdict.

### D. Civil Conspiracy (Busbee—Individually and as PR; Dennis and Laurie Burch)

The Gordons maintain the circuit court erred in granting a directed verdict in favor of Busbee, individually and as PR, and Dennis and Laurie Burch with respect to their civil conspiracy claim. We disagree.

"A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff." *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006). "Civil conspiracy consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." *Vaught v. Waites*, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct.App.1989). "The gravamen of the tort of civil conspiracy is the damage resulting to the plaintiff from an overt act done pursuant to a common design." *Cricket Cove Ventures, LLC v. Gilland*, 390 S.C. 312, 324, 701 S.E.2d 39, 46 (Ct.App.2010).

The record contains no evidence, only speculation, that any of the parties conspired with each other for the purpose of harming Clara or her estate. Furthermore, civil conspiracy requires that the plaintiff claim special damages. In this case, the Gordons' amended complaint fails to allege any special damages incurred as a result of any conspiracy. They allege the same damages as they do under the other causes of action. This is insufficient to establish special damages. *See Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 117, 682 S.E.2d 871, 875 (Ct.App.2009) ("If a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed."). Accordingly, we conclude the circuit did not err in granting a directed verdict.

### III. Jury Charges

#### A. Joint Bank Accounts

The Gordons argue the circuit court erred in failing to give the following jury charge: "Funds placed in a joint account

with right of survivorship remain property of the contributing party until that party's death, unless there is clear and convincing evidence of a different intent." We disagree.

The principal embodied in this charge emanates from the case of *Vaughn v. Bernhardt*, 345 S.C. 196, 547 S.E.2d 869 (2001). In *Vaughn*, the decedent opened several joint bank accounts with her nephew, and the decedent was the sole contributor to those accounts. *Id.* at 197, 547 S.E.2d at 869. The nephew withdrew the funds a week prior to the decedent's death and deposited the monies in an account titled solely in his name. *Id.* The court determined the statute governing such accounts was unambiguous and required a holding that funds withdrawn from such an account prior to a decedent's death were no longer presumed to belong to the survivor but became assets of the decedent's estate. *Id.* at 199, 547 S.E.2d at 870. A survivor would have to establish entitlement to the funds by "other evidence of intent" without the presumption of right of survivorship. *Id.* at 200, 547 S.E.2d at 871.

The circuit court disallowed the jury charge on the procedural grounds in Rule 51, SCRCP, which states:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

■ This charge was requested after closing arguments, but before the circuit court charged the jury. While Rule 51 makes clear that it is preferable to have all requested charges submitted prior to closing arguments, it is not an absolute rule. In *Dalon v. Golden Lanes, Inc.*, 320 S.C. 534, 466 S.E.2d 368 (Ct.App.1996), this court discussed the discretion vested in the trial court with respect to the allowance of late

instructions. "[T]he trial court's discretion to refuse a charge because it is not timely requested should be sparingly and cautiously exercised." *Id.* at 541, 466 S.E.2d at 372. "While Rule 51 contains permissive language with respect to the timing of the filing of a request to charge, [it] does not specifically bar a request to charge that is made after the jury is charged. . . ." *Id.*

Of the transactions remaining at issue, some could be impacted by the failure to give the requested instruction. For example, a check for $70,000 was drawn on Clara and George's joint account in the week prior to her death. George subsequently opened a $50,000 CD in his own name and deposited $20,000 in his own account. These facts fit squarely within the situation presented in *Vaughn.* Furthermore, the defense was not prejudiced by the fact that the instruction was requested after closing arguments. The defense strategy as to George's estate was that he and Clara had an arrangement and he would have been entitled to these joint account funds upon Clara's death. That argument was made to the jury.

■■■ However, to warrant a new trial, the failure to give the requested instruction must have been prejudicial. *See Dalon,* 320 S.C. at 540, 466 S.E.2d at 372 ("In order to warrant reversal for failure to give a requested charge, the refusal must be both erroneous and prejudicial."). In this case, the proportion of contribution to the joint accounts was a disputed factual point. Furthermore, the jury's verdict makes clear that it adopted the version of events presented by George's estate. Evidence of the financial "arrangement" between George and Clara is at least some other evidence of her intent that he have the monies in the joint account. The jury clearly believed the defense in the case, because it did not find against the estate as to any transfer or cause of action. Therefore, we conclude the failure to give the requested instruction was not prejudicial to the Gordons and did not constitute reversible error. *See Pfaehler v. Ten Cent Taxi Co.,* 198 S.C. 476, 484, 18 S.E.2d 331, 335 (1942) (holding the giving of erroneous charge was harmless error when it could not have affected the action of the jury).

## B. Conversion

The Gordons contend the trial court's instruction regarding the burden of persuasion in a conversion claim was confusing and prejudicial warranting a mistrial. We disagree.

At the beginning of his jury charge, the circuit court instructed the jury as follows:

There is one exception to [the general rule that plaintiff bears the burden of proof], and that is because of the confidential relationship between Mr. Burch and his wife. The estate of Mr. Burch has the burden to prove that all transfers to himself under the power of attorney and all transfers, assets from the name of Clara Burch or her estate are valid. He has to prove that by the preponderance or greater weight of the evidence. He also has the burden or preponderance of greater weight of the evidence to show that all transfers by Mr. Burch to himself or to any third party from Clara's funds are valid by the greater weight or preponderance of the evidence. So, it shifts to him on that issue, but everything else the plaintiff is—has their burden except for the transfers, and that is on Mr. Burch and his estate.

Later, when addressing the specific causes of action, the circuit court instructed:

In order to prove conversion, the plaintiff must (1) prove by the preponderance or greater weight of the evidence first that the plaintiff owned or had a right to possess a certain piece of personal property.

In other words, they must prove either title to or a right to possess the personal property. That would include, money, bank accounts at the time of conversion. Ordinarily, an immediate right to possession at the time of conversion is all that is required in the way of title or possession to enable the plaintiff to maintain his action.

Next, the plaintiff must (2) show by the preponderance or greater weight of the evidence that the defendant gained control and possession of the property or prevented the plaintiff from using the property. The wrongful detention of another person's property may give rise to an action for conversion, and, finally, the plaintiff must show (3) by the preponderance or greater weight of the evidence that the

defendant did this without the plaintiffs permission. If the plaintiff expressly or impliedly agreed to or approved the defendant's taking, use, retention, or disposition of the property, the plaintiff cannot recover for conversion of the property. . . .

If you find that a conversion did take place, you should return a verdict for the plaintiff for the value of the property taken with interest. Of course, the plaintiff has to prove all of that by the greater weight or preponderance of the evidence.

The Gordons objected to the charge arguing it was inconsistent and could be construed by the jury as not requiring George's estate to prove the validity of the transfers in question. The circuit court declined to make any changes or additions to its original charge.

 While the jury charge on conversion may have been somewhat confusing, it does not constitute prejudicial error. No South Carolina case discusses the burden-shifting scheme in a conversion claim against a power of attorney or PR. However, in *Howard v. Nasser*, 364 S.C. 279, 613 S.E.2d 64 (Ct.App.2005), this court discussed the burden-shifting scheme as between will or deed contestants and fiduciaries.

A presumption of undue influence arises if the alleged wrongdoer was in a confidential relationship with the donor and there were suspicious circumstances surrounding the preparation, formulation, or execution of the donative transfer, whether the transfer was by gift, trust, will, will substitute, or a donative transfer of any other type. The effect of the presumption is to shift to the proponent the burden of going forward with the evidence, not the burden of persuasion. The presumption justifies a judgment for the contestant as a matter of law only if the proponent does not come forward with evidence to rebut the presumption.

*Id.* at 288, 613 S.E.2d at 68 (quoting Restatement (Third) of Property: Wills and Other Donative Transfers § 8.3 cmt. f (2003)).

The court went on to interpret the Restatement as it pertains to cases in South Carolina.

We interpret the foregoing to mean that if the contestants of a duly executed will provide evidence that a confiden-

tial/fiduciary relationship existed sufficient to raise the presumption, the proponents of the will must offer evidence in rebuttal. We emphasize that although the proponents of the will must present evidence in rebuttal, they do not have to affirmatively disprove the existence of undue influence. Instead, the contestants of the will still retain the ultimate burden of proof to invalidate the will.

*Id.* at 288, 613 S.E.2d at 68–69.

While *Howard* is not directly on point, it illustrates the unusual nature of the burden-shifting scheme in cases involving decedents and their fiduciaries. While the fiduciary may have the burden to offer some evidence to establish a *lack* of undue influence, or in this case the validity of the transfers, the ultimate burden of proof remains with the complaining party unless the fiduciary offers no evidence to rebut the relevant presumption. In this case, the circuit court's instruction indicated the ultimate burden of proof was on the Gordons and also indicated that George's estate, as his representative, was required to offer a valid explanation for the transfers he made. These statements appear to accurately represent the burden-shifting scheme that should be employed. Therefore, the instruction was not erroneous and did not constitute reversible error.

## IV. Equitable Relief

Finally, the Gordons argue the trial court erred in failing to grant the equitable relief requested. We disagree.

"A constructive trust results when circumstances under which property was acquired make it inequitable that it be retained by the one holding legal title. These circumstances include fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution." *Macaulay v. Wachovia Bank of S.C., N.A.*, 351 S.C. 287, 294, 569 S.E.2d 371, 375 (Ct.App. 2002) (internal quotation marks omitted).

In general, a constructive trust may be imposed when a party obtains a benefit which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it as where money has been paid by accident, mistake of fact, or

fraud, or has been acquired through a breach of trust or the violation of a fiduciary duty.

*Straight v. Goss,* 383 S.C. 180, 210, 678 S.E.2d 443, 459 (Ct.App.2009) (internal quotation marks omitted).

In this case, evidence was presented that George was an attentive and loving husband to Clara and at least some evidence showed that the two of them had arranged a plan for him to transfer funds for his benefit. Furthermore, a large portion of the transfers did not occur until the end of Clara's life was near and she would no longer need them for her own benefit. Furthermore, under the statutory law of the state, George was entitled at least to his elective share of Clara's estate. Based on the record as a whole, the circuit court did not err in declining to create a constructive trust in favor of Clara's estate.

The Gordons also sought an accounting, requested the removal of Busbee as PR of George's estate, and raised the Statute of Elizabeth. However, they fail to advance any argument as to why the circuit court's ruling as to these specific equitable matters was error. Therefore, we deem these issues abandoned. *See R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.,* 343 S.C. 424, 437, 540 S.E.2d 113, 120 (Ct.App.2000) (holding that an issue is abandoned if the appellant's brief treats it in a conclusory manner).

## CONCLUSION

We find the circuit court erred in denying the Gordons' directed verdict motion as to the transfers listed on Plaintiff's Exhibit 6 excluding the first-listed transaction in which George withdrew monies from his and Clara's joint account and as to the transfer of money from Clara's Wachovia CD. We remand this matter to the circuit court for a determination as to interest due Plaintiffs on these sums. However, we find the circuit court did not err in granting a directed verdict in Busbee's and Dennis and Laurie Burch's favor as to the claims for aiding and abetting a breach of fiduciary duty, fraud, conversion, and civil conspiracy. As to the jury charges, we conclude the failure to give the requested instruction on joint bank accounts did not constitute prejudicial error and the failure to modify the instruction on the conversion claim was

not erroneous. Finally, we affirm the circuit court's decision not to impose a constructive trust on the disputed funds in favor of Clara's estate, and we conclude the remainder of the Gordons' equitable claims have been abandoned on appeal. Consequently, the ruling of the circuit court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

FEW, C.J., and THOMAS, J., concur.