**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Kim Murphy, Appellant,

v.

Richland Lexington School District 5 Board of Trustees, Bobby Merle Bowers, and Robert Gantt, Defendants,

Of whom Bobby Merle Bowers and Robert Gantt are the Respondents.

Appellate Case No. 2016-001198

Appeal From Richland County
Doyet A. Early, III, Circuit Court Judge

Unpublished Opinion No. 2018-UP-403
Submitted April 2, 2018 – Filed October 31, 2018

**AFFIRMED**

J. Lewis Cromer, of Cromer Babb Porter & Hicks, LLC, of Columbia, for Appellant.

Michael H. Montgomery, of Montgomery Willard, LLC, of Columbia, for Respondent Robert Gantt.

Patrick John Frawley, of Davis Frawley, LLC, of Lexington, for Respondent Bobby Merle Bowers.

**PER CURIAM:**  Kim Murphy appeals the circuit court's order granting summary judgment to Bobby Merle Bowers on Murphy's civil conspiracy cause of action and to Robert Gantt on Murphy's civil conspiracy and defamation causes of action. We affirm.[1]

**FACTS/PROCEDURAL HISTORY**

Murphy and her husband built their home in 2001 in Chapin.  As a result, Murphy began paying taxes and registered to vote in Richland County.  Murphy ran against Gantt for a position on the Board of Trustees (the School Board) of School District Five of Lexington & Richland Counties (the School District) as a Richland County resident in 2004.[2]  During the campaign, Stewart Mungo informed Gantt he did not believe Murphy lived in Richland County.  However, Gantt did not investigate this information.  Murphy lost the election to Gantt.  Gantt was reelected in 2008.

In 2010, Murphy challenged the School Board's proposed expansion of Chapin High School, which required filling in a portion of a stream, asserting that filling in the stream would negatively impact the ecosystem.  *See Murphy v. S.C. Dep't of Health & Envtl. Control*, 396 S.C. 633, 723 S.E.2d 191 (2012).[3]  That same year, Murphy was elected to the School Board for a four-year term.  A nonprofit group was formed and filed suit against Murphy for abuse of process as a result of Murphy's lawsuit.[4]  *See Stroud v. Murphy*, Op. No. 2013-MO-017 (S.C. Sup. Ct. filed June 12, 2013).  Due to the lawsuit and other issues of contention, there was tension among Murphy and some of the other School Board trustees, including

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

[2] The School Board is comprised of four Lexington County residents and three Richland County residents.

[3] In that case, the School District received a "water quality certification . . . from the Department of Health and Environmental Control (DHEC), authorizing the project and allowing the District to fill the approved portion of the stream." *Murphy*, 396 S.C. at 636, 723 S.E.2d at 193.  "The Administrative Law Court (ALC) affirmed the certification, and . . . Murphy appeal[ed] . . . ." *Id.*  The supreme court found "no error in the ALC's analysis or in DHEC's evaluation of the project and accordingly affirm[ed]." *Id.*

[4] The supreme court ultimately reversed the circuit court's denial of Murphy's motion to dismiss and remanded the case to the circuit court to grant the dismissal. *Stroud v. Murphy*, Op. No. 2013-MO-017 (S.C. Sup. Ct. filed June 12, 2013).

Gantt. Murphy had also previously been involved with another suit with the School Board about taping proceedings. Gantt was reelected in 2012. Gantt served as chair of the School Board from 2008 until 2013.

On September 17, 2012, Murphy emailed the Office of Research and Statistics (the Office)[5] requesting a copy of a map of the School District and the Lexington County boundary. She wanted to look at the split of the precincts. Around September or October of 2012, the Office was responsible for assisting the county voter registration offices to make sure voters were assigned to the correct district. Bowers worked as Director of the Office, and one of the divisions he oversaw was geodetic mapping. He later became Director of Mapping and county officials would contact his office for assistance with maps in their county. A computer program flagged Murphy's address along with some others as being in the incorrect district. At that time, William Roberts worked for the Office as the State Political Cartographer and was responsible for assisting the county voter registration offices with ensuring voters were assigned to the correct district. Roberts talked to Lexington County staff about the issue because the Office did not have a working relationship with Richland County. In October of 2012, Bowers apprised Gantt by phone he had been informed Murphy did not live in Richland County and actually lived in Lexington County. After Bowers and Gantt spoke via phone, Gantt made an unscheduled visit to the Office and Roberts showed him the maps. Bowers was not present during the visit.

Gantt contacted the School District's legal counsel, Ken Childs, and a meeting was scheduled at the Office. Childs, Gantt, Bowers, Roberts, Beth Watson—another School Board trustee—and other attorneys at Childs's law firm attended the meeting. The School District learned it needed to make a formal request for Bowers to investigate, and it submitted a formal request in December of 2012. Bowers responded via letter that pursuant to the request, the Office used three sources to determine the county location of Murphy's address: (1) the United States Census Bureau; (2) precinct maps on file with the Office; and (3) research and field work. Bowers stated all three sources showed Murphy is a resident of Lexington County and thus not qualified to hold her position as a resident of Richland County. Instead, Bowers indicated Murphy was eligible for a seat as a Lexington County resident. The meeting, formal request, and Bowers's findings were revealed at the executive session of the January 2013 School Board meeting. After the executive session was closed, at the public meeting, Gantt made a

---

[5] At the time, the Office was a division of South Carolina Budget and Control Board (SCB&CB).

statement regarding Bowers's findings.  Gantt stated that if Bowers's findings were correct, he assumed Murphy would resign because she would not be qualified to represent Richland County.  However, Murphy did not resign.

On January 28, 2013, Gantt made a public statement about Murphy's residency.  After a consultation with the School District's attorneys, an evidentiary hearing was scheduled in front of a retired circuit court judge to allow both sides to present their positions.  Murphy did not attend or participate in the hearing on the advice of her counsel.[6]  At the hearing in front of Judge G. Thomas Cooper Jr., the School District called Bowers to testify.  Following the hearing, Judge Cooper recommended Murphy be removed from the School Board because he found clear and convincing evidence her residence was located in Lexington County.  The School Board held a hearing on March 19, 2013, at which Murphy was removed from her School Board position.

On July 28, 2014, Murphy filed a complaint for civil conspiracy against Gantt and Bowers and for defamation against Gantt.[7, 8]  She alleged the defamation injured her "reputation, diminished likelihood of re-election, humiliation, embarrassment, pain and suffering, and other losses."  She stated she was entitled to punitive damages from Gantt for the defamation.  Further, she asserted the civil conspiracy had caused her "special damages including pain, suffering, and emotional distress directly tied to [her] being blacklisted from [the School] Board, ostracized for her outspoken criticisms that were valid, the loss of her position on [the School] Board, and other intangibles including loss of reputations linked to her ability to run for and be elected to [the School] Board."  She also requested the cost of attorney's

---

[6] Murphy's appellant brief states, "Murphy contended and then still contends that there was no legal justification for the hearing and no jurisdiction since the proper method for challenging a candidate or office holder's residency is to appeal to the election commission of the county as set forth below."

[7] Her complaint also included a defamation cause of action against the School Board.  The circuit court granted the School Board's motion for summary judgment.  This court ultimately dismissed the School Board from this appeal per agreement between Murphy and the School Board.  *Murphy v. Richland Lexington Sch. Dist. 5 Bd. of Trs.*, S.C. Ct. App. Order dated July 28, 2016.

[8] She also filed suit challenging her removal from her elected position on the School Board.  The circuit court affirmed her removal, and she appealed to this court in a separate appeal.  This court found that appeal to be moot.  *Murphy v. Richland-Lexington Sch. Dist. No. 5*, Op. No. 2018-UP-355 (S.C. Ct. App. filed Aug. 15, 2018).

fees for the civil conspiracy cause of action. Additionally, she contended she was entitled to punitive damages for the civil conspiracy.

Bowers filed a motion to dismiss for failure to state a claim as well as for summary judgment. Gantt filed a motion for summary judgment on both causes of action against him. Murphy filed a memorandum in opposition to the motions for summary judgment. In her memorandum, Murphy asserted she testified she suffered numerous damages as a result of Gantt and Bowers's actions, including (1) seeking aid of a psychiatrist due to stress, which she could not afford; (2) suffering severe and reoccurring muscle spasms; (3) seeking aid from physical therapists; (4) losing the salary[9] she would have been paid for her School Board service for the 2013-2014 school year; and (5) losing the ability to be elected in Richland or Lexington County due to the harm to her reputation. Following the hearing,[10] the circuit court granted Gantt's and Bowers's motions for summary judgment. Murphy filed a motion for reconsideration, which the circuit court denied. This appeal followed.[11, 12]

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite the disposition of cases" not requiring "the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule

---

[9] Murphy testified the salary was "almost $10,000" per year.

[10] The record contains no transcript from this hearing.

[11] Murphy moved to consolidate this appeal with her appeal concerning her removal from office. This court denied that motion.

[12] In 2016, Murphy filed to run for the School Board again as a Richland County Resident. Gantt and another School Board trustee brought a declaratory judgment action seeking her removal from the ballot in the circuit court. The circuit court found she was resident of Lexington County and ordered she be removed from the ballot. Murphy appealed to this court, and the case was transferred to the supreme court as a matter concerning an election. The supreme court affirmed the circuit court. *Gantt v. Selph*, 423 S.C. 333, 342, 814 S.E.2d 523, 528 (2018) ("The circuit court's determination that Murphy resides in Lexington County is supported by probative evidence in the record."), *reh'g denied*, S.C. Sup. Ct. Order dated June 27, 2018; *id.* at 343, 814 S.E.2d at 528 ("[T]he circuit court's declaration that Murphy is not qualified to be a candidate for a Richland County seat on the School Board is **AFFIRMED**.").

56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003).

"A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006). "At the summary judgment stage of litigation, the court does not weigh conflicting evidence with respect to a disputed material fact." *Huffman v. Sunshine Recycling, LLC*, 417 S.C. 514, 523, 790 S.E.2d 401, 406 (Ct. App. 2016) (quoting *S.C. Prop. & Cas. Guar. Ass'n v. Yensen*, 345 S.C. 512, 518, 548 S.E.2d 880, 883 (Ct. App. 2001)), *cert. granted*, S.C. Sup. Ct. Order dated Sept. 29, 2017. In *Hancock v. Mid-South Management Co.*, 381 S.C. 326, 330-31, 673 S.E.2d 801, 803 (2009), our supreme court clarified that the level of evidence required to defeat a motion for summary judgment is dependent upon the non-moving party's burden of proof at trial. "[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Id.* at 330, 673 S.E.2d at 803. "However, in cases requiring a heightened burden of proof . . . , we hold that the non-moving party must submit more than a mere scintilla of evidence to withstand a motion for summary judgment." *Id.* at 330-31, 673 S.E.2d at 803.

"A jury issue is created when there is material evidence tending to establish the issue in the mind of a reasonable juror." *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 17, 677 S.E.2d 612, 616 (Ct. App. 2009). "However, this rule does not authorize submission of speculative, theoretical, and hypothetical views to the jury." *Id.* (quoting *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 461, 494 S.E.2d 835, 841 (Ct. App. 1997)). "Our courts have recognized that when only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court." *Id.* (quoting *Small*, 329 S.C. at 461, 494 S.E.2d at 841). "A corollary of this rule is that verdicts may not be permitted to rest upon surmise, conjecture, or speculation." *Id.* (quoting *Small*, 329 S.C. at 461, 494 S.E.2d at 841). "Finally, assertions as to liability must be more than mere bald allegations made by the non-moving party in order to create a genuine issue of material fact."

*Id.*

## LAW/ANALYSIS

### I. Civil Conspiracy

Murphy contends the circuit court erred in granting Bowers's and Gantt's motions for summary judgment on her civil conspiracy causes of action. We disagree.

"A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff. Civil conspiracy involves acts that are by their very nature covert and clandestine and usually not susceptible of proof by direct evidence." *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006) (citation omitted). The elements a plaintiff must demonstrate in order to prove a civil conspiracy are (1) the combination of two or more people; (2) for the purpose of injuring the plaintiff; and (3) which cause special damages. *Pye v. Estate of Fox*, 369 S.C. 555, 566-67, 633 S.E.2d 505, 511 (2006). "[I]n civil [conspiracy] actions, the gravamen of the tort is the damage resulting to [the] plaintiff from an overt act done pursuant to a common design." *Vaught v. Waites*, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct. App. 1989).

To establish a conspiracy, direct or circumstantial evidence "must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Cowburn v. Leventis*, 366 S.C. 20, 49, 619 S.E.2d 437, 453 (Ct. App. 2005) (quoting *First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 575, 511 S.E.2d 372, 383 (Ct. App. 1998)). Conspiracy may be inferred from the nature of the acts committed, the relationship of the parties, the interests of the alleged conspirators, and other relevant circumstances. *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 601, 358 S.E.2d 150, 153 (Ct. App. 1987). Because civil conspiracy is covert and clandestine by its very nature, it is usually not susceptible of proof by direct evidence. *Id.* "Proof showing *concert of action* in the commission of the unlawful acts, from which the natural or reasonable inferences arise that the acts were in furtherance of the common design of the alleged conspirators, is sufficient; at least to establish a *prima facie* case of conspiracy." *Id.* at 601-02, 358 S.E.2d at 153. In *Cowburn*, because the record did not contain any evidence of an agreement between the defendants or that they joined together for the purpose of injuring the plaintiff, we found no genuine issue of material fact existed to establish a claim for civil conspiracy. 366 S.C. at 49, 619 S.E.2d at 453. In *Gordon v. Busbee*, 397 S.C. 119,

136, 723 S.E.2d 822, 831 (Ct. App. 2012), this court found "[t]he record contains no evidence, only speculation, that any of the parties conspired with each other for the purpose of harming [the plaintiff estate]."

"Furthermore, civil conspiracy requires that the plaintiff claim special damages." *Id.* In *Gordon*, this court found "the [plaintiffs'] amended complaint fails to allege any special damages incurred as a result of any conspiracy. They allege the same damages as they do under the other causes of action. This is insufficient to establish special damages." *Id.* at 136, 723 S.E.2d at 831-32. "Because the quiddity of a civil conspiracy claim is the damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action." *Pye*, 369 S.C. at 568, 633 S.E.2d at 511. "If a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 117, 682 S.E.2d 871, 875 (Ct. App. 2009).

In this case, Murphy contends "the most proper avenue" for which Gantt to have challenged her residency would have been through the election commission. She asserts the testimony by Gloria Wilson, former chairman of the Richland County Board of Voter Registration, supports this contention. However, in Murphy's action challenging her removal from the School Board, the circuit court, Judge DeAndrea Gist Benjamin, noted Murphy argued "the [School] Board should have sought a residency determination from the Richland County Election Commission pursuant to . . . [section] 7-5-230 [of the South Carolina Code]." However, Judge Benjamin found:

> In *Blair v. City of Manning*, 345 S.C. 141, 546 S.E.2d 649 (2001), our [s]upreme [c]ourt rejected a similar argument. In *Blair*, the [s]upreme [c]ourt held . . . [section] 7-5-230 inapplicable to an election protest based on a candidate's residency[] because the challenge concerned an election protest not voter registration, even though both voter registration and the election protest turned on the issue of residency. Here, the [School] Board has challenged neither [Murphy]'s voter registration, nor protests her election, but rather contends she is no longer qualified to hold the position of [School] Board trustee under S.C. Act No. 326 of 2002, [section] 9, which requires [Murphy] to be a resident of Richland

County. Under these circumstances, including the specific requirements of Act No. 326 of 2002[, section] 9, and [section] 59-19-60 [of the South Carolina Code], it is appropriate for the [School] Board to determine whether one of its members continues to meet the legal requirements for holding the office of [School] Board trustee.

Murphy's appeal of Judge Benjamin's order, which was the subject of Murphy's other appeal, did not raise this ruling as an issue. Accordingly, that ruling is the law of the case. *See Dreher v. S.C. Dep't of Health & Envtl. Control*, 412 S.C. 244, 249-50, 772 S.E.2d 505, 508 (2015) ("'An unappealed ruling is the law of the case and requires affirmance.' Thus, should the appealing party fail to raise all of the grounds upon which a lower court's decision was based, those unappealed findings—whether correct or not—become the law of the case." (quoting *Shirley's Iron Works, Inc. v. City of Union*, 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013))); *Flexon v. PHC-Jasper, Inc.*, 413 S.C. 561, 571, 776 S.E.2d 397, 403 (Ct. App. 2015) ("Under the law-of-the-case doctrine, a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been, or raised on appeal, but expressly rejected by the appellate court." (quoting *Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009))).

The appropriate vehicle to challenge the School Board's conduct as procedurally improper was the lawsuit in which she challenged her removal. Because Judge Benjamin decided that issue and Murphy did not appeal it, it became the law of the case, and it would be improper to reconsider it here. *See Holmes v. E. Cooper Cmty. Hosp., Inc.*, 408 S.C. 138, 155, 758 S.E.2d 483, 493 (2014) ("Under the doctrine of collateral estoppel, when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (quoting *Carman v. S.C. Alcoholic Beverage Control Comm'n*, 317 S.C. 1, 6, 451 S.E.2d 383, 386 (1994)); *id.* at 156, 758 S.E.2d at 493 ("The estoppel of a judgment does not extend to matters not expressly adjudicated, and which can be inferred only by argument or construction from the judgment, except where they are necessary and inevitable inferences in the sense that the judgment could not have been rendered as it was without deciding such points." (quoting *Carman*, 317 S.C. at 6, 451 S.E.2d at 386).

Murphy testified she believed Gantt and Bowers were "buddies" or "involved" with each other through being in the same "education . . . and political circles"

because both had served as president of the South Carolina School Board Association at some point.  However, Bowers testified that prior to Gantt and his communication regarding the issues with Murphy's residency, he had never met Gantt.  He indicated he was no longer a member of the School Board Association when Gantt joined it.  As such, Murphy presented nothing more than speculation that Gantt and Bowers worked together to harm her.  *See Gordon*, 397 S.C. at 136, 723 S.E.2d at 831 ("The record contains no evidence, only speculation, that any of the parties conspired with each other for the purpose of harming [the plaintiff estate].");  *Cowburn*, 366 S.C. at 49, 619 S.E.2d at 453 (finding no genuine issue of material fact existed to establish a claim for civil conspiracy because the record did not contain any evidence of an agreement between the defendants or that they joined together for the purpose of injuring the plaintiff).  Further, Murphy did not present any evidence of damages from the alleged civil conspiracy that were distinct from the damages she alleged arose from her defamation claim and testified she did not have a written medical opinion linking her alleged health conditions to the alleged conspiracy.  *See Gordon*, 397 S.C. at 136, 723 S.E.2d at 831-32 (holding a complaint that alleges the same damages for civil conspiracy as for other causes of action is insufficient to establish special damages).  Accordingly, the circuit court did not err in granting summary judgment on the civil conspiracy causes of action.

## II. Defamation

Murphy contends the circuit court erred in granting summary judgment to Gantt on her defamation cause of action.  She asserts she presented sufficient evidence to survive summary judgment that Gantt acted with malice, he per se defamed her, and his statements were not privileged.  We disagree.

The tort of defamation allows plaintiffs to recover for injuries to their reputation as the result of defendants' communications to others of a falsity regarding the plaintiffs.  *Boone v. Sunbelt Newspapers, Inc.*, 347 S.C. 571, 580, 556 S.E.2d 732, 737 (Ct. App. 2001).  A plaintiff seeking to prove defamation "must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 465, 629 S.E.2d 653, 664 (2006).  "A communication is defamatory if it tends to impeach the honesty, integrity, virtue, or reputation . . . ."  *Castine v. Castine*, 403 S.C. 259, 266, 743 S.E.2d 93, 96 (Ct. App. 2013) (alteration by court) (quoting F. Patrick Hubbard & Robert L. Felix, *The South Carolina Law of Torts* 462 (2d ed. 1997)).

"A person makes a defamatory statement if the statement 'tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him.'" *Fountain v. First Reliance Bank*, 398 S.C. 434, 441, 730 S.E.2d 305, 309 (2012) (quoting *Fleming v. Rose*, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002)).  Defamation does not focus on the hurt to the defamed parties' feelings, but on the injury to their reputations.  *Murray v. Holnam, Inc.*, 344 S.C. 129, 138, 542 S.E.2d 743, 748 (Ct. App. 2001).  "Defamatory communications take two forms: libel and slander.  Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct."  *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 484, 514 S.E.2d 126, 133-34 (1999).

"[T]he common law presumed a defamatory statement to be false . . . ."  *Parker v. Evening Post Publ'g Co.*, 317 S.C. 236, 243, 452 S.E.2d 640, 644 (Ct. App. 1994).  "In [*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 256 (1964)], however, the United States Supreme Court recognized that the First Amendment's guarantees of freedom of speech and of the press place certain limits on the right of the states to award damages in a libel action."  *Id.*  "These limitations are necessary to ensure free and unfettered discussion of matters of public concern, because '[t]he protection of the public requires not merely discussion, but information. . . . Whatever is added to the field of libel is taken from the field of public debate.'" *Id.* (alterations by court) (quoting *Sullivan*, 376 U.S. at 272).  "Thus, a public official may recover damages for defamatory statements relating to his official conduct only if he proves that the statements were made with actual malice.  The *Sullivan* rule also applies to libel actions brought by public figures."  *Id.*

"In defamation actions involving a 'public official' or 'public figure,' the plaintiff must prove the statement was made with 'actual malice,' i.e., with either knowledge that it was false or reckless disregard for its truth."  *Elder v. Gaffney Ledger*, 341 S.C. 108, 113, 533 S.E.2d 899, 901 (2000); *see also Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 512-13, 506 S.E.2d 497, 503 (1998) (holding constitutional actual malice requires evidence the publisher "either realized the statement was false or had serious reservations about its truth").  "Whether the evidence is sufficient to support a finding of actual malice is a question of law.  When reviewing an actual malice determination, this [c]ourt is obligated to independently examine the entire record to determine whether the evidence sufficiently supports a finding of actual malice."  *Elder*, 341 S.C. at 113-14, 533 S.E.2d at 901-02 (citation omitted).

"Constitutional actual malice required in defamation actions involving public officials is distinguishable from common law malice, which refers to feelings of ill-will, spite, or desire to injure." *Boone*, 347 S.C. at 581, 556 S.E.2d at 737-38. "The constitutional guarantee of free speech requires that a public official or public figure must prove a defamatory statement was made 'with "actual malice" . . . .'" *Id.* at 581, 556 S.E.2d at 738 (quoting *George v. Fabri*, 345 S.C. 440, 451, 548 S.E.2d 868, 874 (2001)). "Actual malice is 'a *subjective* standard which tests the defendant's good faith belief in the truth of [its] statements.'" *Anderson v. Augusta Chronicle*, 355 S.C. 461, 473, 585 S.E.2d 506, 512 (Ct. App. 2003) (alteration by court) (quoting *George*, 345 S.C. at 456, 548 S.E.2d at 876), *aff'd*, 365 S.C. 589, 619 S.E.2d 428 (2005). "Hence, absent proof of a knowing falsehood, the plaintiff must establish a defendant 'in fact entertained serious doubts as to the truth of his publication' or possessed a 'high degree of awareness' of probable falsity." *Id.* (quoting *George*, 345 S.C. at 456, 548 S.E.2d at 876). "Recklessness presupposes 'an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.'" *Id.* (quoting *Peeler v. Spartan Radiocasting, Inc.*, 324 S.C. 261, 266, 478 S.E.2d 282, 284 (1996)).

"Proof of actual malice requires the plaintiff to demonstrate, by clear and convincing evidence, that the publisher made the statements either knowingly or with reckless disregard for their truth or falsity." *Id.* "Clear and convincing evidence may be defined as 'that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established.'" *Id.* (quoting *Peeler*, 324 S.C. at 269 n.4, 478 S.E.2d at 286 n.4). "It is an intermediate measure of proof, i.e., 'more than a mere preponderance but less than is required for proof beyond a reasonable doubt; it does not mean clear and unequivocal.'" *Id.* (quoting *Peeler*, 324 S.C. at 269 n.4, 478 S.E.2d at 286 n.4). "[T]he appropriate inquiry at summary judgment on the issue of actual malice relates to what the plaintiff must prove at trial. Thus, we hold that the appropriate standard at the summary judgment phase on the issue of constitutional actual malice is the clear and convincing standard." *George*, 345 S.C. at 454, 548 S.E.2d at 875 (citation omitted). When a "claim requires proof by clear and convincing evidence . . . more than a mere scintilla of evidence must be presented to withstand a motion for summary judgment." *Turner v. Milliman*, 392 S.C. 116, 124-25, 708 S.E.2d 766, 770 (2011).

Murphy agreed she was a public official as a school board member, and thus, the actual malice standard applies. *See Scott v. McCain*, 272 S.C. 198, 200-01, 250 S.E.2d 118, 120 (1978) (noting a school board member is a public official). According to Murphy, Gantt acted with actual malice when he "announced to the

public in a [School] Board meeting that Murphy was not a Richland County resident before a proper investigation in[to] the boundary line [as] required by law was conducted. Mungo did not provide Gantt any reasons as to why he believed Murphy lived in Lexington County." Murphy claims the statement that she is a resident of Lexington County is untrue. She asserts she is still on Richland County voter and tax rolls. Additionally, Murphy alleges Gantt's comments she "should 'do the right thing' and step down from the [School] Board" were defamatory.

Murphy alleges other general instances of defamation by Gantt.[13] She refers to a combination of written and spoken words combined with actions and attitudes. Murphy largely contends that Gantt and other School Board members implied she was deceitful and incompetent and allowed speakers to berate her. She further asserts that many statements were defamatory based on the tone that was used when the words were said. She contends Gantt suggested she knew she did not live in Richland County, she falsified her candidacy application and oath, and she should have resigned during her elected term. Murphy cited to Gantt's written public statement following the January 14, 2013 meeting as support that he stated these things as well as that she did not live in Richland County. However, this statement does not support her contention Gantt made the statements she attributes to him. The relevant portions provide:

> In late October, it came to my attention that [School] Board Member Kim Murphy might not be, in fact, a resident of Richland County . . . .
>
> . . . .
>
> Based on the information I received, I made a formal inquiry of Bobby Bowers, Director of the [Office] of the [SCB&CB], whose office has statewide responsibility for

---

[13] Murphy also contends the School District published false statements about her such as posting on the School District marquee that it had won a lawsuit, presumably the one filed by Murphy challenging the renovation, and posting online one-sided information about lawsuits involving Murphy. She suggests the marquee was false because she sued DHEC—not the School District—and the ALC ultimately ordered the School District to alter its plans. Even if this information was false—which the statement the School District won the lawsuit is not—Murphy's own arguments indicated these were actions by the School District, not Gantt, and the School District was dismissed from this appeal by agreement.

election district maps.  A copy of my December 20, 2012[] letter to Mr. Bowers is attached.  I also informed other officers of the [School] Board of my inquiry, along with legal counsel for the [School] District.

On January 12, 2013, I received a formal response to my inquiry from Mr. Bowers. . . .

Tonight, in Executive Session, I informed the entire [School] Board of Mr. Bowers'[s] response, along with the [School] District Superintendent and legal counsel for the [School] District.  Tomorrow, I will send a letter to Ms. Murphy confirming tonight's discussion.  I assume that Ms. Murphy will evaluate the information and, if Mr. Bowers'[s] position is correct, will resign her position as a member of the [School] Board, as she was apparently not qualified to represent Richland County at the time of her election.

If there is a dispute about her qualifications to serve, the [School] District, through legal counsel, will make arrangements to refer the matter to an independent, impartial person with extensive judicial experience to publicly hear the facts and law and make a recommendation to the [School] Board.

This statement does not contain the specific statements Murphy attributes to Gantt. Gantt does not state Murphy is not a Richland County resident in this statement; he states she *might* not be one and that if Bowers is correct (in his mapping), she is not qualified and he assumes she will resign.

On March 19, 2013, Gantt issued another public statement following the School Board meeting that night.  In it he stated:

After careful consideration and deliberation the [School] Board sustained (agreed) with the opinion of Judge Cooper[,] which states there is clear and convincing evidence that Ms. Murphy's residence is in Lexington County.  Therefore, her residence in Lexington County deprives her of the qualifications for office as a

representative of Richland County on the [School Board]. Based on these facts, the [School] Board voted to remove Ms. Murphy from the [School] Board . . . .

We thank Ms. Murphy for her service on the [School] Board and wish her well in the future.

In previous communication, Ms. Murphy and others have attempted to shape this issue as a personal action toward Ms. Murphy. Nothing could be further from the truth. Our actions this evening center on the simple truth that she does not live in the county which she was elected to represent, a simple but essential requirement of the law. To allow Ms. Murphy to remain on the [School] Board would violate state law and potentially invalidate future decisions made by the [School] Board.

We sincerely hope that Ms. Murphy will honor this decision and "do the right thing" as she has stated previously in public meetings, regarding the law and residency requirements. We also hope there will be no further disruption or distraction for the [School] Board, the [S]chool [D]istrict[,] or the taxpayers . . . regarding this matter.

This statement provided that *the School Board* agreed with Judge Cooper's finding Murphy lives in Lexington County and is thus disqualified as serving as a Richland County representative on the School Board. Multiple courts, including our supreme court, have now found Murphy lived in Lexington County.[14] Accordingly, Murphy has presented no evidence the statement she did not live in Richland County was false. Further, Murphy presented no evidence Gantt did not believe she did not live in Richland County. The School Board's March 19 statement was based on Judge Cooper's determination, which relied on information and research provided by the Office. *See* 20 S.C. Jur. *Libel and Slander* § 65 (1993) ("[A]s long as the defendant believed in good faith that what he said was true, it does not matter whether he acted out of spite or ill will toward the plaintiff."). Accordingly, for any of the statements contained in the record,

---

[14] Murphy testified she had been told at least once prior to this situation that she did not live in Richland County.

Murphy presented no evidence Gantt acted with "a knowing falsehood" or "'in fact entertained serious doubts as to the truth of his publication' or possessed a 'high degree of awareness' of probable falsity." *Anderson*, 355 S.C. at 473, 585 S.E.2d at 512 (quoting *George*, 345 S.C. at 456, 548 S.E.2d at 876). Therefore, the circuit court did not err in granting Gantt's motion for summary judgment as to Murphy's defamation cause of action.[15]

**CONCLUSION**

The circuit court did not err in granting summary judgment to Gantt and Bowers on Murphy's civil conspiracy cause of action. Additionally, the circuit court did not err in granting summary judgment to Gantt on the defamation cause of action. Accordingly, the circuit court's order is

**AFFIRMED.**

**LOCKEMY, C.J., and WILLIAMS and KONDUROS, JJ., concur.**

---

[15] Based on our determination that Murphy did not provide more than a mere scintilla of evidence that Gantt acted with actual malice, we need not decide whether Gantt's statements were privileged or whether he "defamed her per se." *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review the remaining issues when its determination of a prior issue is dispositive of the appeal).